IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - X
REGAL WARE, INC.,                :
                                 :
            Appellant,           :
                                 :
      v.                         :   Case No. 1:06-cv-588 (JJF)
                                 :
GROUPE SEB USA, SEB S.A.,        :
and GLOBAL HOME PRODUCTS         :
LLC, et al.,                     :
                                 :
            Appellees.           :
- - - - - - - - - - - - - - X
In re:                           :
                                 :   Chapter 11
GLOBAL HOME PRODUCTS LLC,        :
et al.,                          :   Case No. 06-10340 (KG)
                                 :   Jointly Administered
            Debtors.             :
- - - - - - - - - - - - - - X

**ANSWERING BRIEF OF SEB S.A. AND GROUPE SEB USA, APPELLEES**

Gregg M. Galardi (I.D. No. 2991)
Matthew P. Ward (I.D. No. 4471)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
mpward@skadden.com

Attorneys for SEB S.A. and
Groupe SEB USA

Dated:    Wilmington, Delaware
          December 1, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS................................. 2

SUMMARY OF ARGUMENT............................................ 2

STATEMENT OF APPLICABLE STANDARD OF APPELLATE REVIEW.......... 4

STATEMENT OF FACTS............................................ 4

     A.   The Bankruptcy Cases And The WearEver Asset
        Sale................................................ 4

     B.   The Appellant's Efforts To Stay The Sale
        Order.............................................. 8

     C.   The Appeal......................................... 9

ARGUMENT..................................................... 11

I.   THE COURT SHOULD DISMISS THIS APPEAL AS MOOT
    PURSUANT TO BANKRUPTCY CODE SECTION 363(m)............... 11

     A.   Courts Regularly Dismiss Appeals From Sale
        Orders As Moot Under Bankruptcy Code Section
        363(m)............................................ 11

     B.   This Case Satisfies The Third Circuit's Two-
        Factor Test For Mootness Pursuant to
        Bankruptcy Code Section 363(m).................... 14

        1.   The Sale Order Was Not Stayed Pending
           Appeal........................................ 14

        2.   This Court Would Affect The Validity Of
           The Trademark Conveyance If It Reversed
           Or Modified The Sale Order.................... 15

     C.   The Appeal Contravenes The Purposes Behind
        Bankruptcy Code Section 363...................... 18

        1.   The Appeal Interferes With The Debtors'
           Prompt Asset Disposition...................... 18

2.   The Appeal Would Undermine The Finality
Of Asset Dispositions In Bankruptcy And
Discourage Bidding............................ 19

D.   The Appellant's Contention That Bankruptcy
Code Section 363(m) Does Not Apply Is
Misplaced......................................... 20

E.   The Sale Order Should Not Be Vacated Based
On The Mootness Of The Appeal...................... 23

II.   THE COURT SHOULD AFFIRM THE SALE ORDER.................. 26

A.   The Bankruptcy Court Correctly Concluded
That The Trademark Sublicense Was Freely
Assignable To SEB Pursuant To Bankruptcy
Code Section 365................................... 26

B.   The Appellant Gives No Legal Theory
Demonstrating That The Bankruptcy Court's
Decision Was Incorrect............................ 29

C.   The Bankruptcy Court Correctly Determined
That The Trademark Sublicense Was Not A
Personal Services Contract........................ 31

## TABLE OF CASES AND STATUTES

**Cases**

Days Inns of Am., Inc. v. Regency Manor Ltd., 94 F.
    Supp. 2d 1200 (D. Kan. 2000) ......................... 30

Duke Power Co. v. Greenwood County, 299 U.S. 259 (1936)
    ..................................................... 26

Gen. Motors Acceptance Corp. v. Dykes (In re Dykes),
    10 F.3d 184 (3d Cir. 1993) ........................... 4

Great W. Sugar Co. v. Nelson, 442 U.S. 92 (1979) ........ 26

High River Ltd. P'ship v. Trans World Airlines, Inc.
    (In re Trans World Airlines, Inc.), Case No. 01-226
    (SLR), 2002 U.S. Dist. LEXIS 5951 (D. Del. Mar. 26,
    2002) ................................................ 13

In re Buildnet, Inc., Case No. 01-82293, 2002 Bankr.
    LEXIS 1851 (Bankr. M.D.N.C. Sept. 20, 2002) .......... 30

In re Cable One CATV, 169 B.R. 488 (Bankr. D.N.H. 1994)
    ..................................................... 19

In re Golden Books Family Entm't, Inc., 269 B.R. 311
    (Bankr. D. Del. 2001) ......................... 3, 28, 30

In re Hovis, 356 F.3d 820 (7th Cir. 2004) ............... 18

In re Luce Indus., Inc., 14 B.R. 529 (S.D.N.Y. 1981) ..... 30

In re Quantegy, Inc., 326 B.R. 467 (Bankr. M.D. Ala.
    2005) ................................................ 27

In re Rooster, Inc., 100 B.R. 228 (Bankr. E.D. Pa.
    1989) ......................................... 3, 27, 28

In re Sax, 796 F.2d 994 (7th Cir. 1986) ................. 19

In re The Travelot Co., 286 B.R. 447 (Bankr. S.D. Ga.
    2002) ................................................ 29

Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.,
    141 F.3d 490 (3d Cir. 1998) ..................... passim

iv

Kuntz v. Cray Computer Corp. (In re Cray Computer
Corp., Case No. 96-1125, 1996 U.S. App. LEXIS 25014
(10th Cir. 1996) ........................................ 12

L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel
Home Ctrs., Inc.), 209 F.3d 291 (3d Cir. 2000) ..... 15, 17

Licensing by Paolo, Inc. v. Sinatra (In re Paolo
Gucci), 105 F.3d 837 (2d Cir. 1997) related
proceeding at 126 F.3d 380 (2d Cir. 1997) ............. 12

Morgan v. Polaroid Corp. (In re Polaroid Corp.), Case
No. 02-1353 (JJF), 2004 U.S. Dist. LEXIS 1879 (D. Del.
Feb. 9, 2004) ......................................... 12

Murray v. Franke-Misal Techs. Group, LLC (In re
Supernatural Foods, LLC), 268 B.R. 759 (Bankr. M.D.
La. 2001) ............................................. 30

Operating Tel. Co. Subsidiaries of Verizon
Communications, Inc. v. Net2000 Communications, Inc.
(In re Net2000 Communications Inc.), Case No. 02-146
(KAJ), 2004 U.S. Dist. LEXIS 20625 (D. Del. Oct. 5,
2004) ............................................. 12, 18

Perlman v. Catapult (In re Catapult Entm't, Inc.), 165
F.3d 747 (9th Cir. 1999) ............................. 29

Schlumberger Res. Mgmt. Servs., Inc. v. Cellnet Data
Sys., Inc. (In re Cellnet Data Sys., Inc.), 327 F.3d
242 (3d Cir. 2003) .................................... 4

Tap Publ'ns, Inc. v. Chinese Yellow Pages (N.Y.) Inc.,
925 F. Supp. 212 (S.D.N.Y. 1996) ..................... 30

United States v. Munsingwear, Inc., 340 U.S. 36 (1950)
............................................. 23, 25, 26

**Statutes**

11 U.S.C. § 363................................. 20, 24, 27

11 U.S.C. § 363(m)................................... passim

11 U.S.C. § 365...................................... passim

11 U.S.C. § 365(a) ................................... 30, 31

11 U.S.C. § 365(c)(1) .......................... 3, 4, 30, 31

Fed. R. Bankr. P. 8013 ................................. 4

SEB S.A. and Groupe SEB USA (collectively, "SEB"), two of the appellees in the above-captioned appeal, and the purchasers of certain assets of the debtors and debtors-in-possession in the above-captioned chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), submit this answering brief in opposition to the Opening Brief of Appellant Regal Ware, Inc. (D.I. 23, the "Opening Brief") SEB hereby requests this Court to dismiss the appeal as moot or, alternatively, affirm the Order Approving Motion of Debtors for the Entry of an Order (I) Approving Sale by the WearEver Debtors of Substantially All of WearEver Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief, entered by the Bankruptcy Court on August 14, 2006. (App. Rec. #52[1], the "Sale Order")

---

[1] A list of all items designated by all of the parties to be included in the record on this appeal is found in the Joint Index for Copies of Designated Record Items (D.I. 10), hereinafter referred to as "App. Rec. #__".

## NATURE AND STAGE OF PROCEEDINGS

By the Sale Order, the Bankruptcy Court granted the Motion of the Debtors for an Order: (I) Approving Sale by the WearEver Debtors of Substantially All of the WearEver Debtors' Operating Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief. (App. Rec. #17, the "Sale Motion")

On August 14, 2006, Regal Ware, Inc. (the "Appellant") filed its Notice of Appeal from the Sale Order. (App. Rec. #59) On November 9, 2006, the Appellant filed its Opening Brief. This is SEB's answering brief in opposition to the Opening Brief and in support of either dismissing the appeal as moot or, alternatively, affirming the Sale Order.

## SUMMARY OF ARGUMENT

In the Sale Order, the Bankruptcy Court approved, among other things, the sale, assumption, and assignment of the Trademark Sublicense (as defined below) to SEB. (App. Rec. #52, at ¶¶ P, Q, 2, 3) The Appellant challenges the sale, assumption, and assignment of the Trademark

2

Sublicense to SEB (the "Trademark Conveyance") on the grounds that the Bankruptcy Court erred by (1) holding that because the Trademark Sublicense was exclusive it was freely assignable under Bankruptcy Code section 365, and (2) not finding that the Trademark Sublicense was a "personal services" contract, not assignable absent the Appellant's consent under Bankruptcy Code section 365(c)(1).

As demonstrated below, the appeal should be dismissed as moot pursuant to Bankruptcy Code section 363(m) because the Debtors and SEB closed on the sale contemplated by the Sale Order on August 16, 2006. (App. Rec. #83, at p. 1)

Moreover, even if this appeal were not dismissed as moot, this Court should affirm the Sale Order. The Bankruptcy Court properly found that the Trademark Sublicense was exclusive. Moreover, it correctly applied the legal precedent that holds that exclusive agreements are freely assumable and assignable under Bankruptcy Code section 365. See Sale Order, App. Rec. #52, at ¶ P (relying on In re Rooster, Inc., 100 B.R. 228, 233 (Bankr. E.D. Pa. 1989) and In re Golden Books Family Entm't, Inc., 269 B.R. 311, 319 (Bankr. D. Del. 2001) and concluding that exclusive trademark license is freely assignable under

section 365).  Consequently, the Bankruptcy Court properly concluded that Bankruptcy Code section 365(c)(1) did not apply and, thus, that the Trademark Sublicense was not a "personal services" contract.

### STATEMENT OF APPLICABLE STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's conclusions of law are subject to plenary, de novo review by this Court. Schlumberger Res. Mgmt. Servs., Inc. v. Cellnet Data Sys., Inc. (In re Cellnet Data Sys., Inc.), 327 F.3d 242, 244 (3d Cir. 2003); Gen. Motors Acceptance Corp. v. Dykes (In re Dykes), 10 F.3d 184, 186 (3d Cir. 1993).  The Bankruptcy Court's factual determinations are subject to a "clearly erroneous" standard.  Fed. R. Bankr. P. 8013; Cellnet Data Sys., 327 F.3d at 244; Dykes, 10 F.3d at 185.

### STATEMENT OF FACTS

**A.   The Bankruptcy Cases And The WearEver Asset Sale**

This dispute arises from the Debtors' sale of substantially all of the business of Mirro Acquisition Inc., Mirro Puerto Rico, Inc., and Mirro Operating Company LLC (collectively, the "WearEver Debtors") to SEB, including but not limited to the sale, assumption, and assignment to SEB of the WearEver Debtors' exclusive, worldwide, non-royalty trademark license for a number of Regal, Regal &

Design, and Coronet Regal trademarks (collectively, the "Trademarks").

On October 29, 1999, the Appellant entered into a Trademark License Agreement (the "Trademark License") with Newell Operating Company ("Newell").  A copy of the Trademark License was attached as Exhibit C to SEB's Objection to the District Court Stay Motion, as defined herein.  (App. Rec. #77 Exh. C)  The Trademark License was an exclusive, worldwide, royalty-free license for the Trademarks.  (Id. § 1.1)  The Trademark License provided no restriction on Newell's right to sublicense the Trademarks, stating that "[l]icensee shall have the right to sublicense others, including its Affiliates, to use the Licensed Trademarks in the Defined Field."  (Id. § 1.3)

Pursuant to the sublicensing provision, Newell sublicensed the Trademarks to one of the WearEver Debtors, Mirro Operating Company LLC ("Mirro").  Specifically, Newell entered into a Trademark Sublicense Agreement, dated April 2004, between Newell and Mirro (the "Trademark Sublicense").  A copy of the Trademark Sublicense was attached as Exhibit A to SEB's Objection to the District Court Stay Motion, as defined herein.  (App. Rec. #77 Exh. A)  The Trademark Sublicense is an exclusive worldwide

trademark sublicense permitting the Debtors to use the Trademarks. (Id.) The Trademark Sublicense does limit further sublicensing by Mirro as well as the assignment of the sublicense held by Mirro. (Id. § 1.3)

On April 10, 2006, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. After commencing their chapter 11 cases, the Debtors determined that they would maximize the value of their estates for their creditors by selling substantially all of the business of the WearEver Debtors. (App. Rec. #53, at p. 55) Accordingly, on July 7, 2006, the Debtors filed a motion, supplemented on July 11, 2006, to approve bid procedures for the sale of certain assets (the "WearEver Assets") of the WearEver Debtors. (App. Rec. ##1 & 7, collectively, the "Bid Procedures Motion")

The Bankruptcy Court entered an order approving the Bid Procedures Motion on July 14, 2006. (App. Rec. #15, the "Bid Procedures Order") On July 14, 2006, the Debtors filed the Sale Motion, seeking approval of the sale of the WearEver Assets. Pursuant to the Bid Procedures Order, SEB provided the Debtors with a bid to purchase the WearEver Assets on August 3, 2006. (App. Rec. #68, at p. 2)

6

On August 3, 2006, the Appellant filed a late objection to the Sale Motion. (App. Rec. #31, the "Sale Objection") In the Sale Objection, the Appellant objected to the Trademark Conveyance. On August 7, 2006, the Debtors filed their reply to the Sale Objection. (App. Rec. #37)

Pursuant to the Bid Procedures Order, the Debtors conducted an auction with respect to the WearEver Assets on August 7, 2006. (App. Rec. #68) The Bankruptcy Court then conducted a hearing on the Sale Motion on August 8, 2006 (the "Sale Hearing"), at which hearing the Bankruptcy Court found that the bid submitted by SEB was the highest or otherwise best offer, and approved the sale of the WearEver Assets to SEB. (App. Rec. #53, at p. 285) The Bankruptcy Court further overruled the Sale Objection, and approved the Trademark Conveyance. (Id. at p. 284)

Subsequent to the Sale Hearing, the Appellant objected to certain provisions in the proposed sale order. (App. Rec. #47) The Bankruptcy Court conducted an emergency hearing on those and other objections to the proposed sale order on August 11, 2006. (App. Rec. #69) After a lengthy hearing on the form of the Sale Order, the Bankruptcy Court entered the Sale Order. (App. Rec. #52)

7

By the Sale Order, the Bankruptcy Court approved the

Debtors' sale of the WearEver Assets, including the

Trademark Conveyance.  (App. Rec. #52, at ¶¶ P, Q, 2, 3)

    **B.**    **The Appellant's Efforts To Stay The Sale Order**

        On the morning of August 12, 2006, the Appellant

filed its Emergency Motion of Regal Ware, Inc. for Stay

Pending Appeal of the Sale Order in the Bankruptcy Court.

(App. Rec. #50, the "Bankruptcy Court Stay Motion")  In the

Bankruptcy Court Stay Motion, the Appellant requested a

stay of the effectiveness of the Sale Order and/or the

Trademark Conveyance.  (Id.)

        On August 14, 2006, the Bankruptcy Court

conducted a hearing that lasted nearly four hours with

respect to the Bankruptcy Court Stay Motion.  After hearing

lengthy testimony from three witnesses, and hearing all

interested parties' arguments, the Bankruptcy Court denied

the Bankruptcy Court Stay Motion.  The order denying the

Bankruptcy Court Stay Motion was entered on August 15, 2006.

(App. Rec. #60, the "Bankruptcy Court Stay Order")

        On August 15, 2006, the Appellant filed its

Emergency Motion of Regal Ware, Inc. for Stay Pending

Appeal of the Sale Order in this Court.  (App. Rec. #71,

the "District Court Stay Motion")  Pursuant to the District

Court Stay Motion, the Appellant requested this Court (as it had unsuccessfully requested the Bankruptcy Court) to stay the effect of the Trademark Conveyance. SEB filed its Memorandum of Purchasers in Opposition to the District Court Stay Motion on August 16, 2006. (App. Rec. #77, the "Objection to District Court Stay Motion") The Debtors and the Debtors' postpetition lender, Wachovia Bank, National Association, as agent (the "Lender") also each submitted briefs in opposition to the District Court Stay Motion. (App. Rec. ##76, 78)

Also on August 16, 2006, the Debtors and SEB closed on the sale of the WearEver Assets. Accordingly, that afternoon, the Debtors filed a supplemental memorandum in opposition to the District Court Stay Motion, informing this Court that the Debtors believed that the appeal was rendered moot pursuant to Bankruptcy Code section 363(m). (App. Rec. #83)

On August 17, 2006, this Court entered its Memorandum Order denying the District Court Stay Motion. (App. Rec. #84, the "Memorandum Order")

C.  The Appeal

On August 14, 2006, the Appellant filed its Notice of Appeal from the Sale Order. (App. Rec. #59) On

9

September 6, 2006, the Appellant filed its Statement of
Issues and Designation of Record by Appellant Regal Ware,
Inc. (D.I. 2)  The Debtors, SEB, and the Lender
subsequently filed their counterdesignations of items to be
included in the appeal.  (D.I. 9, 3)  Additionally, the
Debtors filed an objection to the Appellant's designation
of issues on appeal, and SEB and the Official Committee of
Unsecured Creditors joined in that objection (D.I. 4, 5, 6)

The record was docketed with this Court on
September 21, 2006.  On October 10, 2006, the Appellant
submitted a Joint Index for Copies of Designated Record
Items, listing all items designated by all of the parties
to be included in the record.  (D.I. 10)

On October 18, 2006, upon the motion of the
Debtors, this Court entered an order permitting this case
to proceed without mediation.  (D.I. 17, the "Scheduling
Order")  In the Scheduling Order, the Court ordered that
"Appellant's Opening Brief on appeal shall be filed within
fifteen (15) days of the date of this Order."  (D.I. 17, at
¶ 3(a))  However, on November 2, 2006, the day that its
opening brief was due, the Appellant filed a Motion to
Extend Time for Appellant to File Opening Brief, requesting
an additional week to file its opening brief.  (D.I. 18,

10

the "Motion to Extend")  On November 7, 2006, this Court
entered an Order granting the Motion to Extend, and
ordering that "Appellant's Opening Brief on appeal shall be
due Thursday, November 9, 2006." (D.I. 22, at ¶ 1)

The Appellant filed its Opening Brief on November
9, 2006 at 11:56 p.m.  (D.I. 23)  At 1:10 a.m. the next
morning, the Appellant filed a Notice of Errata -
Supplement to Opening Brief, which contained the tables of
contents and authorities for the Opening Brief.  (D.I. 24)

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THIS APPEAL AS MOOT PURSUANT TO BANKRUPTCY CODE SECTION 363(m).**

**A.    Courts Regularly Dismiss Appeals From Sale Orders As Moot Under Bankruptcy Code Section 363(m).**

Any challenge by the Appellant to the Sale Order
is moot pursuant to Bankruptcy Code section 363(m).

Section 363(m) provides:

> The reversal or modification on appeal of an
> authorization under subsection (b) or (c) of this
> section of a sale or lease of property does not
> affect the validity of a sale or lease under such
> authorization to an entity that purchased or
> leased such property in good faith, whether or
> not such entity knew of the pendency of the
> appeal, unless such authorization and such sale
> or lease were stayed pending appeal.

11 U.S.C. § 363(m).

11

The Third Circuit Court of Appeals has determined that Bankruptcy Code section 363(m) specifically applies to appeals from the sale and assignment of trademark licenses. See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 497-99 (3d Cir. 1998) (reasoning that trademark licenses constitute "property of the estate under section 541 [and are] covered by section 363," and therefore dismissing appeal of sale order as moot because "section 363(m) governs the sale").[2]

This court regularly has applied section 363(m) to dismiss an appeal from a sale order for which closing has occurred. See Operating Tel. Co. Subsidiaries of Verizon Communications, Inc. v. Net2000 Communications, Inc. (In re Net2000 Communications Inc.), Case No. 02-146 (KAJ), 2004 U.S. Dist. LEXIS 20625, at *8 (D. Del. Oct. 5, 2004); Morgan v. Polaroid Corp. (In re Polaroid Corp.), Case No. 02-1353 (JJF), 2004 U.S. Dist. LEXIS 1879, at *5 (D. Del.

---

[2]     Other courts have agreed that section 363(m) applies to the sale and assignment of intellectual property.  See Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 105 F.3d 837, 840 (2d Cir. 1997) (dismissing appeal of sale of trademark and licensing rights as moot pursuant to section 363(m), subject to finding of good faith), related proceeding at 126 F.3d 380, 394 (2d Cir. 1997) (finding purchaser acted in good faith); Kuntz v. Cray Computer Corp. (In re Cray Computer Corp.), Case No. 96-1125, 1996 U.S. App. LEXIS 25014, at *2 (10th Cir. 1996) (dismissing appeal of order authorizing sale of patents and related intellectual property as moot pursuant to section 363(m)).

Feb. 9, 2004); High River Ltd. P'ship v. Trans World
Airlines, Inc. (In re Trans World Airlines, Inc.), Case No.
01-226 (SLR), 2002 U.S. Dist. LEXIS 5951, at *6 (D. Del.
Mar. 26, 2002).

        In the Sale Order, the Bankruptcy Court concluded
that the finality of the sale of the WearEver Assets,
including the Trademark Conveyance, should be protected
under Bankruptcy Code section 363(m).  Specifically, the
Bankruptcy Court found that "[t]he Buyer is acting as a
good faith purchaser, as that term is used in the
Bankruptcy Code and is, accordingly, entitled to the
protections set forth in Section 363(m) of the Bankruptcy
Code."  (App. Rec. #52, at ¶ T)  The Bankruptcy Court
therefore concluded that "the Buyer is entitled to all of
the protections afforded by Section 363(m) of the
Bankruptcy Code, including but not limited to the provision
that the reversal or modification on appeal of the
authorization provided herein to consummate the
transactions shall not affect the validity of the
transactions to the Buyer, unless such authorization is
duly stayed pending such appeal."  (App. Rec. #52, at ¶ 12)

        The Bankruptcy Court's factual findings were not
clearly erroneous.  Its legal conclusion that Bankruptcy

Code section 363(m) should apply was proper.   Consequently,
for the reasons set forth below, this Court should dismiss
the appeal of the Sale Order as moot.

**B.   This Case Satisfies The Third Circuit's Two-Factor Test For Mootness Pursuant to Bankruptcy Code Section 363(m).**

The Third Circuit Court of Appeals utilizes a
two-factor test in determining mootness pursuant to
Bankruptcy Code section 363(m).   Specifically, that court
has held that appeals are moot if:   "(1) the underlying
sale or lease was not stayed pending the appeal, and
(2) the court, if reversing or modifying the authorization
to sell or lease, would be affecting the validity of such a
sale or leas."   Krebs Chrysler, 141 F.3d at 499.   As set
forth below, the facts of the present case satisfy each of
these two factors, and consequently, the Court should
dismiss the appeal as moot.

**1.   The Sale Order Was Not Stayed Pending Appeal.**

Notwithstanding the Appellant's requests, the
Sale Order was not stayed pending appeal.   (App. Rec. #50;
App. Rec. #71)   In fact, both the Bankruptcy Court and this
Court rejected the Appellant's stay request.   (App. Rec.
#60; App. Rec. #84)   Accordingly, the first Krebs Chrysler
mootness factor is satisfied.

14

2.    **This Court Would Affect The Validity Of The Trademark Conveyance If It Reversed Or Modified The Sale Order.**

The second _Krebs Chrysler_ factor considers whether "the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." _Krebs Chrysler_, 141 F.3d at 499.

Under this factor, the Court must first look to the remedies requested by the appellant. _Id._ at 499. Here, the Appellant has argued that (1) its appeal is not moot (Opening Brief, D.I. 23, at Part V.A); (2) if the appeal is moot, this Court nonetheless must vacate the Sale Order authorizing the Trademark Conveyance (_Id._ at Part V.B); and (3) this Court should reverse the Trademark Conveyance as error (_Id._ at Part V.C).

Because the Appellant seeks to vacate or reverse the authorization to sell, assume, and assign the Trademark Sublicense to SEB, by granting such relief this Court would affect the validity of a sale that has already closed. _See Krebs Chrysler_, 141 F.3d at 499 (finding appeal moot because reversal "would have an impact on the validity of the auction sale of the . . . franchise"); _see also L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs.,_

15

Inc.), 209 F.3d 291, 305 (3d Cir. 2000) ("Any revocation of the authorization [to assume and assign the lease] would necessarily adversely affect the validity of the assignment."); see also Memorandum Order, App. Rec. #84, at p. 2 ("As a result of the closing of the sale, it appears to the Court that Regal Ware's Motions are now moot.").

Moreover, even if the closing alone were insufficient to render this appeal moot, SEB has taken significant additional steps to implement the terms of the Sale Order and the Trademark Conveyance.  First, SEB has continued the retail sale of Regal products at Wal-Mart Stores, Inc. ("Wal-Mart") nationwide, a critical vendor. (App. Rec. #67, at pp. 73-75, 93-94)  Consistent with the evidence at the hearing on the Bankruptcy Court Stay Motion, SEB has put into place distribution procedures to fulfill its commitments to Wal-Mart, and has advised Wal-Mart that it will make every effort to maintain a mutually beneficial relationship with respect to the sale of Regal products. (Id. at pp. 93-96)  Additionally, SEB has developed and utilized procedures to address customer issues, including the return of Regal products, performance on guaranties of Regal products, and concerns expressed by unsatisfied customers.  SEB also has established an employee base

16

sufficient to fulfill its obligations arising from the sale of Regal products, and has addressed numerous employment issues with such staff and workers. Furthermore, SEB has paid in excess of $1.5 million in compensation to Wal-Mart for lost sales/margin due to product supply interruptions since the acquisition, the majority of which is due to the Regal business.

These efforts are only a few of the steps that SEB has taken to maintain the ongoing sale of Regal products at the world's largest retail chain. SEB also has handled technical and logistical matters relating to the online sale of Regal products. Finally, at the Appellant's request, SEB has forwarded payments directly to the Appellant to reimburse the Appellant for legal expenses arising out of the protection of the Trademarks.

Under these circumstances, any reversal of the Sale Order would dramatically affect the validity of the Trademark Conveyance. See, e.g., Rickel Home Ctrs., 209 F.3d at 305 ("[T]he parties [have] completed the transaction. [The assignee] took possession and expended substantial funds to renovate and redesign the property to fit its business. Any revocation of the authorization would necessarily adversely affect the validity of the

assignment."); <u>Net2000 Communications</u>, 2004 U.S. Dist. LEXIS 20625, at *10 ("[I]n accordance with the Bankruptcy Court's Order, Debtors' assets have been transferred to the purchasers free and clear of liens. Accordingly, modification or reversal of the Bankruptcy Court's order would affect the validity of the sale and is impermissible under 363(m).").

Accordingly, the second <u>Krebs Chrysler</u> factor also is satisfied, and the Court should dismiss the appeal as moot pursuant to Bankruptcy Code section 363(m).

### C.  The Appeal Contravenes The Purposes Behind Bankruptcy Code Section 363.

#### 1.  The Appeal Interferes With The Debtors' Prompt Asset Disposition.

An overriding policy of Bankruptcy Code section 363 is to facilitate quick dispositions of a debtor's assets if it will result in the greatest recovery for the debtor's creditors. <u>See, e.g.</u>, <u>In re Hovis</u>, 356 F.3d 820, 822 (7th Cir. 2004) ("[S]ometimes the best means to administer an estate is to sell the assets quickly in order to maximize their value.").

In this instance, allowing the Appellant to proceed with its appeal of the Sale Order would contravene section 363's goal of facilitating the Debtors' prompt

deposition of their assets.  As the Bankruptcy Court found, such a prompt disposition was required.  (App. Rec. #68, at p. 25)  That finding was not clearly erroneous, and the Appellant does not contend otherwise.

     2.    **The Appeal Would Undermine The Finality Of Asset Dispositions In Bankruptcy And Discourage Bidding.**

Bankruptcy Code section 363(m) helps to maximize creditor recovery by <u>ensuring finality of asset dispositions</u>.  <u>See</u> <u>In re Cable One CATV</u>, 169 B.R. 488, 492 (Bankr. D.N.H. 1994) ("The policy behind § 363(m) is to promote finality in judgments and encourage the obtaining of maximum value of assets notwithstanding the risks associated with bankruptcy sales.").

Without the finality of sales provided by Bankruptcy Code section 363(m), bidders would be hesitant to participate in auctions and sales, thereby jeopardizing the debtor's opportunity to maximize the proceeds generated by the sale.  <u>See</u> <u>In re Sax</u>, 796 F.2d 994, 998 (7th Cir. 1986) ("Without the degree of finality provided by the stay requirement purchasers are likely to demand a steep discount for investing in the property."); <u>Cable One CATV</u>, 169 B.R. at 492 (finding that purpose of section 363(m) is "to overcome people's natural reluctance to deal with a

bankrupt firm . . . by assuring them that . . . they need
not worry . . . because some creditor is objecting to the
transaction and is trying to get [a reversal]").

Based on the evidence presented, the Bankruptcy
Court found that SEB acted "as a good faith purchaser . . .
and is, accordingly, entitled to the protections set forth
in Section 363(m) of the Bankruptcy Code."  (App. Rec. # 52,
at ¶ T)  This factual finding has not been challenged by
the Appellant, nor was it clearly errorneous.

If the appeal is permitted to proceed, the
finality of the Trademark Conveyance would be placed at
risk, thereby potentially posing significant financial risk
to SEB.  This result would discourage good faith purchasers
such as SEB from participating in auctions by subjecting
them to substantial monetary losses resulting from the
reversal of a sale, which in turn would decrease the
ability of debtors to maximize value.  This result is
inconsistent with the purpose of section 363(m).

D.   **The Appellant's Contention That Bankruptcy Code
     Section 363(m) Does Not Apply Is Misplaced.**

The Appellant contends that Bankruptcy Code
section 363(m) does not apply to the Trademark Conveyance.
That contention is simply incorrect.  In Krebs Chrysler,

20

the Court of Appeals specifically determined that
Bankruptcy Code section 363(m) applies to the sale of a
trademark license.  Specifically, in discussing in detail
the interaction of sections 363(m) and 365, the court
determined that while section 365 might control the
procedure for assignment and assumption of a trademark
license, the agreement also constituted property of the
estate and thus was governed by section 363.  See Krebs
Chrysler, 141 F.3d at 498 ("[Trademark licenses] are
property of the estate under section 541 [and therefore]
covered by section 363, although the procedure for their
transfer is delineated by section 365.").  Consequently,
the Court of Appeals dismissed the appeal from the sale
order authorizing the sale, assumption, and assignment of
the trademark license as moot pursuant to section 363(m).
See id. ("Therefore, section 363(m) governs the sale of the
franchises here, notwithstanding that section 365 applies
to the particular mechanics of conveyance.").

        In arguing that section 363(m) does not apply to
a section 365 assumption and assignment transaction, the
Appellant relies principally on In re Joshua Slocum Ltd.,
922 F.2d 1081 (3d Cir. 1990).  (D.I. 23, at Part V.A.1)
However, in Joshua Slocum, the debtor assumed and assigned

a lease under section 365, but did not sell the lease under section 363. _Joshua Slocum_, 922 F.2d at 1084. Because there was only an assumption and assignment under section 365, not a sale under section 363, the court did not apply section 363(m). _Id._ at 1085.

Indeed, in _Krebs Chrysler_, the Third Circuit Court of Appeals specifically held that _Joshua Slocum_ does not apply when the authority for a sale, assumption, and assignment is under both sections 363 and 365. Specifically, in analyzing the applicability of Bankruptcy Code sections 363 and 365 to the sale and assignment of a trademark license, the court stated:

> _Slocum_ does not control our decision here. There, the Trustee requested and received 'authorization to assume and assign the Lease pursuant to 11 U.S.C. § 365.' However, the Trustee never attempted to sell the the [sic] Lease under section 363, and the parties conceded that section 363(m) did not apply in cases where the Trustee merely assigns a lease under section 365. Unlike _Slocum_, the bankruptcy judge in this case authorized both an assumption under section 365 and a subsequent sale under section 363. The bankruptcy court also conducted an auction . . . . For all these reasons, _Slocum_ does not foreclose our conclusion that the sale of the franchises is covered by section 363(m).

_Krebs Chrysler_, 141 F.3d at 498 (citations omitted); _see also_ _Rickel Home Ctrs._, 209 F.3d at 296, 302 (distinguishing _Joshua Slocum_ and finding section 363(m)

applicable because "the District Court explicitly authorized a sale of the leases pursuant to section 363, despite [appellant's] contention that section 363 was inapplicable" (emphasis in original)).

Thus, Joshua Slocum is inapplicable to this appeal, and the appeal from the Sale Order is moot under Bankruptcy Code section 363(m) pursuant to the Third Circuit's holdings in Krebs Chrysler and Rickel Home Centers.

**E.    The Sale Order Should Not Be Vacated Based On The Mootness Of The Appeal.**

The Appellant argues that if this Court dismisses the appeal as moot, this Court should direct the Bankruptcy Court to vacate the portion of the Sale Order that authorized the Trademark Conveyance.  (D.I. 23, at Part V.B) In support, the Appellant cites United States v. Munsingwear, Inc., 340 U.S. 36 (1950).  (D.I. 23, at p. 11) The Appellant's reliance on Munsingwear is misplaced and its argument should be rejected.

Assumption and assignment of the Trademark Sublicense requires a court order pursuant to Bankruptcy Code section 365.  That section states that "the trustee, subject to the court's approval, may assume or reject any

23

executory contract." 11 U.S.C. § 365; see also In re Compuadd Corp., 166 B.R. 862, 866 (Bankr. W.D. Tex. 1994) ("An order ('court approval') under § 365(a) is required in order for a proposed assumption or rejection to be effective." (citing cases)); Swiss Hot Dog Co. v. Vail Village Inn, Inc. (In re Swiss Hot Dog Co.), 72 B.R. 569, 571 (D. Colo. 1987) ("[Section 365(a)] requires that the assumption have court approval in the form of an express order." (citing cases)).

Similarly, the WearEver Debtors' sale of the Trademark Sublicense and their other assets outside the ordinary course of business required an order pursuant to Bankruptcy Code section 363. See 11 U.S.C. § 363 ("The trustee, after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate."); In re McDonald Bros. Constr., Inc., 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990) ("Section 363(b) . . . requires court approval, after notice and hearing, before estate property is used outside of the ordinary course of the debtor's business.").

Thus, if this Court were to vacate the Sale Order, or even the part authorizing the Trademark Conveyance, it would undo the Bankruptcy Court's required authorization to

consummate the Trademark Conveyance.   Clearly that is not
required or even intended by Munsingwear.   Indeed,
Bankruptcy Code section 363(m) specifically states that a
successful appeal "does not affect the validity of a sale
or lease under [Bankruptcy Code section 363]."   11 U.S.C.
§ 363(m).   Therefore, the express terms of section 363(m)
contemplate that an appeal from the Sale Order will be
mooted, not that a sale order or any part thereof will be
vacated.

          The cases cited by the Appellant do not show
otherwise, as they involved circumstances in which the
parties' entire dispute had become moot.   For example, in
United States v. Munsingwear, Inc., 340 U.S. 36 (1950), the
case principally relied upon by the Appellant, the United
States' complaint had alleged violations of a commodities
price fixing regulation.   Id. at 37.   When the commodity
involved was deregulated, the respondent moved to dismiss
the appeal on the ground that the entire case had become
moot.   Id.   In affirming the Court of Appeals' dismissal,
the Supreme Court stated that "[t]he established practice
of the Court in dealing with a civil case . . . which has
become moot while on its way here or pending our decision
on the merits is to reverse or vacate the judgment below

                            25

and remand with a direction to dismiss."  <u>Id.</u> at 39
(emphasis added); <u>see also</u> <u>Great W. Sugar Co. v. Nelson</u>,
442 U.S. 92, 92 (1979) (vacating judgment only because "it
appears upon appeal <u>that the controversy has become
entirely moot</u>" (quoting <u>Duke Power Co. v. Greenwood County</u>,
299 U.S. 259, 267 (1936)) (emphasis added).

 Here, the underlying dispute between the
Appellant, on the one hand, and SEB, the Debtors, and the
Lender, on the other hand, has not become moot.  Rather,
Bankruptcy Code section 363(m) has rendered only the <u>appeal</u>
from the Sale Order moot, not the relief granted by that
order.  Consequently, this Court should deny the
Appellant's request to vacate any part of the Sale Order.

**II.  THE COURT SHOULD AFFIRM THE SALE ORDER.**

 **A.  The Bankruptcy Court Correctly Concluded That The
Trademark Sublicense Was Freely Assignable To SEB
Pursuant To Bankruptcy Code Section 365.**

 The Appellant has not challenged the Bankruptcy
Court's factual finding that the Trademark Sublicense was
an exclusive agreement.  Rather, the Appellant maintains
that the Bankruptcy Court's legal conclusion -- that the
Trademark Sublicense was assignable pursuant to Bankruptcy
Code section 365 -- was incorrect.  (D.I. 23, at Part V.C)

As set forth below, the Bankruptcy Court's legal conclusions were correct.

Under section 365, a debtor-in-possession has broad authority to assume and assign executory contracts. Specifically, Bankruptcy Code section 365(a) states that "[e]xcept as provided . . . in subsections (b), (c), and (d) of this section, the [debtor-in-possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Bankruptcy Code section 365(c)(1) contains a limited exception to this broad authority. Specifically, section 365(c)(1) states that a debtor-in-possession "may not assume or assign any executory contract [if] applicable law excuses [the non-debtor party] from accepting performance from or rendering performance to an entity other than the debtor." 11 U.S.C. § 365(c)(1).

Courts construe "365(c)(1) as a narrow exception [because c]lauses against assignment are not favored in the law." In re Quantegy, Inc., 326 B.R. 467, 470 (Bankr. M.D. Ala. 2005) (permitting assumption and assignment of trademark license agreement); see also In re Rooster, Inc.,

27

100 B.R. 228, 233 n.13 (Bankr. E.D. Pa. 1989)

("§ 365(c)(1)(A) must be construed narrowly.").

Exclusive licenses of trademarks and copyrights may be assumed and assigned pursuant to Bankruptcy Code section 365(a), and assignment is not barred under the narrow exception in section 365(c)(1).  See In re Golden Books Family Entm't, Inc., 269 B.R. 311, 319 (Bankr. D. Del. 2001) (holding that exclusive copyright license is freely assignable under section 365); Rooster, 100 B.R. at 233 (holding that assumption and assignment of exclusive trademark license agreement did not violate section 365(c)(1)).

Because the Trademark Sublicense is an exclusive agreement, the Bankruptcy Court correctly determined that the Trademark Sublicense was assignable pursuant to Bankruptcy Code section 365(a) and did not fall within section 365(c)(1)'s limited exception.  Specifically, applying Golden Books and Rooster, the Bankruptcy Court properly concluded that "the Sublicense Agreement is not subject to the limitations of Section 365(c)(1) of the Bankruptcy Code, and as such may be assumed and assigned to the Buyer pursuant to Section 365(b) and (f) of the

Bankruptcy Code." (App. Rec. #52, at ¶ P) This Court

should affirm the Bankruptcy Court's decision.[3]

> **B.    The Appellant Gives No Legal Theory Demonstrating
> That The Bankruptcy Court's Decision Was
> Incorrect.**

The Appellant has cited numerous cases and

secondary authorities in an attempt to show that the

Bankruptcy Court incorrectly relied on Golden Books and

Rooster and improperly determined as a legal matter to

allow the sale and assignment of the Trademark Sublicense

to SEB. (D.I. 23, at Part V.C.2-4) The cases on which the

Appellant relies, however, do not apply to the Trademark

Sublicense. Those cases instead dealt with nonexclusive

agreements. See Perlman v. Catapult (In re Catapult Entm't,

Inc.), 165 F.3d 747, 750 n.3 (9th Cir. 1999) (addressing

nonexclusive patent license, and stating "we express no

opinion regarding the assignability of exclusive patent

licenses" (emphasis in original)); In re The Travelot Co.,

286 B.R. 447, 455-56 (Bankr. S.D. Ga. 2002) (addressing

nonexclusive license, and stating that "[f]or trademark law

---

[3]    This Court already has determined that the Bankruptcy Court's
legal conclusions were correct. Specifically, in the Memorandum
Order, this Court stated that "[t]he Bankruptcy Court's reliance
on In re Golden Books, 269 B.R. 311 (D. Del. 2001), and In re
Rooster, Inc., 100 B.R. 228 (Bankr. E.D. Pa. 1989) was not
misplaced." (App. Rec. #84, at p. 3)

to preclude assumability . . . the Contract must be construed as containing a <u>non-exclusive</u> trademark license." (emphasis added)); <u>Tap Publ'ns, Inc. v. Chinese Yellow Pages (N.Y.) Inc.</u>, 925 F. Supp. 212, 214, 217-18 (S.D.N.Y. 1996) (addressing litigation between two non-exclusive licensees); <u>Days Inns of Am., Inc. v. Regency Manor Ltd.</u>, 94 F. Supp. 2d 1200, 1201 (D. Kan. 2000) (addressing trademark infringement claim by licensor against nonexclusive licensee); <u>In re Luce Indus., Inc.</u>, 14 B.R. 529, 530 (S.D.N.Y. 1981) (addressing nonexclusive licensee's motion to assume license).

Courts have declined to expand these decisions beyond their limited scope. <u>See</u> <u>Golden Books</u>, 269 B.R. at 314 (citing <u>Catapult</u> and stating that whether "copyright law preclude[s] the free assignment . . . turns on whether the license is exclusive or nonexclusive"); <u>Murray v. Franke-Misal Techs. Group, LLC (In re Supernatural Foods, LLC)</u>, 268 B.R. 759, 795-96 (Bankr. M.D. La. 2001) (citing <u>Catapult</u>, but stating that the issue turns on "whether the rule [for] non-exclusive patent licenses extends to exclusive licenses"); <u>In re Buildnet, Inc.</u>, Case No. 01-82293, 2002 Bankr. LEXIS 1851, at *11, 14-15 (Bankr. M.D.N.C. Sept. 20, 2002) (discussing <u>Catapult</u>, but stating

that the court must "distinguis[h] between exclusive and
non-exclusive licenses.  The holder of the exclusive
license . . . may freely transfer his rights.  In
contrast . . . a nonexclusive license is personal to the
transferee and cannot be assigned").

Therefore, the Appellant has failed to provide
any legal authority demonstrating that the Bankruptcy
Court's legal conclusion that the Trademark Sublicense was
freely assignable was incorrect.[4]

**C.   The Bankruptcy Court Correctly Determined That
     The Trademark Sublicense Was Not A Personal
     Services Contract.**

The Appellant also incorrectly states that "[t]he
Bankruptcy Court did not address whether the sublicense at
issue here in this case is a personal services contract."
(D.I. 23, at p. 22)

The Bankruptcy Court did, in fact, conclude that
the agreement was not a personal services contract, stating
that "[t]he case of [Rooster] supports the Court's
conclusion, wherein the Court held that an exclusive

---

[4]     In its Memorandum Order, this Court already has determined that
       the cases relied upon by the Appellant do not apply to the facts
       at hand, stating that "the cases cited by Regal Ware involve non-
       exclusive licenses or particular circumstances that are different
       from the circumstances here."  (App. Rec. 84, at p. 3)

license for trademarks is freely assignable in that it does not constitute a personal services contract." (App. Rec. #52, at ¶ P)  The Appellant's suggestion to the contrary also ignores the factual underpinning of this legal decision -- that the Appellant sold the Trademark License to Newell without placing any limitation on Newell's right to sublicense the Trademarks.  Specifically, the Bankruptcy Court found that "the license to Newell and the Sublicense Agreement to Mirro were exclusive and did not restrict assignment to any particular entity." (Id.)  Moreover, "[t]he Sublicense Agreement does not prohibit an assignment, Regal having given up control of the trademark license and has not regained that control." (Id.)

In fact, the Bankruptcy Court went a step further, and held that the Trademark Sublicense was not a "personal services" contract or any other type of contract not assignable without the non-debtor's consent. See id. (holding that "the Sublicense Agreement is not subject to the limitations of Section 365(c)(1) of the Bankruptcy Code, and as such may be assumed and assigned to the Buyer").  Accordingly, the Appellant's attempt to challenge the Trademark Conveyance on the grounds that the Bankruptcy

Court omitted to determine whether that agreement was a personal services contract lacks support.[5]

WHEREFORE, SEB respectfully requests that the Court (i) dismiss the appeal of the Sale Order as moot pursuant to Bankruptcy Code section 363(m), or alternatively, (ii) affirm the Sale Order and the Trademark Conveyance, and in either event grant SEB such further relief as is just and proper.

Dated:     Wilmington, Delaware
           December 1, 2006

_____
Gregg M. Galardi (I.D. No. 2991)
Matthew P. Ward (I.D. No. 4471)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
mpward@skadden.com

Attorneys for SEB S.A. and
Groupe SEB USA

---

[5]    This Court already has agreed with the Bankruptcy Court's conclusion, stating in the Memorandum Order that "the Bankruptcy Court correctly concluded that the Sublicense Agreement was not a personal services contract and was freely assignable as an exclusive license that places no restriction on assignments." (App. Rec. #84, at pp. 2-3)

33

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2006, I electronically filed the **Answering Brief of SEB S.A. and Groupe SEB USA, Appellees** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following to whom I also delivered a copy by hand delivery:

(Counsel for the Debtors)
Laura Davis Jones, Esquire
Bruce Grohsgal, Esquire
Sandra G. M. Selzer, Esquire
Pachulski Stang Ziehl Young
Jones & Weintraub LLP
919 North Market Street, 17th
Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
**(via Hand Delivery and Electronic Mail)**

(Counsel for Regal Ware, Inc.)
Morton R. Branzburg, Esquire
Steven K. Kortanek, Esquire
Patrick A. Costello, Esquire
Jennifer L. Scoliard, Esquire
Klehr Harrison Harvey Branzburg
& Ellers LLP
919 North Market Street, Suite
1000
Wilmington, Delaware 19801
**(via Hand Delivery and Electronic Mail)**

(Counsel for the Official Committee of Unsecured Creditors)
David M. Fournier, Esquire
Evelyn J. Meltzer, Esquire
Pepper Hamilton LLP
1313 Market Street, Suite 5100
Wilmington, Delaware 19801
**(via Hand Delivery and Electronic Mail)**

(Counsel for Wachovia Bank,
National Association)
Joseph H. Huston, Jr., Esquire
Stevens & Lee, P.C.
1105 North Market Street, 7th
Floor
Wilmington, Delaware 19801
**(via Hand Delivery and Electronic Mail)**

I hereby certify that on December 1, 2006, I have mailed, via first-class mail unless otherwise indicated, the document(s) to the following non-registered participants:

(Counsel for Regal Ware, Inc.)
Daniel R. Johnson, Esquire
Joseph A. Kromholz, Esquire
Ryan Kromholz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618

(Counsel for CitiGroup)
Joseph Smolinsky, Esquire
Chadbourne and Parke LLP
30 Rockefeller Plaza
New York, New York 10112

(Counsel for the Official Committee of Unsecured Creditors)
Sharon Levine, Esquire
Bruce Buechler, Esquire
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068-1791

(Counsel for Wachovia Bank, National Association)
Steven B. Soll, Esquire
Jonathan N. Helfat, Esquire
Matthew J. Miller, Esquire
Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, New York 10169-0075

(Counsel for Lifetime Brands, Inc.)
Ronald S. Gellert, Esquire
Michael Busenkell, Esquire
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
**(via Hand Delivery)**

(Counsel to Lifetime Brands, Inc.)
Leonard Klingbaum, Esquire
Neil E. Herman, Esquire
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

Gregg M. Galardi (I.D. No. 2991)
Matthew P. Ward (I.D. No. 4471)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
mpward@skadden.com