IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - -  X
REGAL WARE, INC.,                :
                                 :
              Appellant,         :
                                 :
      v.                         :   Case No. 1:06-cv-588 (JJF)
                                 :
GROUPE SEB USA, SEB S.A.,        :
and GLOBAL HOME PRODUCTS         :
LLC, et al.,                     :
                                 :
              Appellees.         :
- - - - - - - - - - - - -  X
In re:                           :
                                 :   Chapter 11
GLOBAL HOME PRODUCTS LLC,        :
et al.,                          :   Case No. 06-10340 (KG)
                                 :   Jointly Administered
              Debtors.           :
- - - - - - - - - - - - -  X
```

**COMPENDIUM OF UNREPORTED OPINIONS CITED IN ANSWERING BRIEF
OF SEB S.A. AND GROUPE SEB USA, APPELLEES**

Gregg M. Galardi (I.D. No. 2991)
Matthew P. Ward (I.D. No. 4471)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
mpward@skadden.com

Attorneys for SEB S.A. and
Groupe SEB USA

Dated:   Wilmington, Delaware
         December 1, 2006

## TABLE OF CASES

**Cases**                                                          **Tab**

High River Ltd. P'ship v. Trans World Airlines, Inc.
  (In re Trans World Airlines, Inc.), Case No. 01-226
  (SLR), 2002 U.S. Dist. LEXIS 5951 (D. Del. Mar. 26,
  2002) ................................................. 1

In re Buildnet, Inc., Case No. 01-82293, 2002 Bankr.
  LEXIS 1851 (Bankr. M.D.N.C. Sept. 20, 2002) ............ 2

Kuntz v. Cray Computer Corp. (In re Cray Computer
  Corp., Case No. 96-1125, 1996 U.S. App. LEXIS 25014
  (10th Cir. 1996) ....................................... 3

Morgan v. Polaroid Corp. (In re Polaroid Corp.), Case
  No. 02-1353 (JJF), 2004 U.S. Dist. LEXIS 1879 (D. Del.
  Feb. 9, 2004) .......................................... 4

Operating Tel. Co. Subsidiaries of Verizon
  Communications, Inc. v. Net2000 Communications, Inc.
  (In re Net2000 Communications Inc.), Case No. 02-146
  (KAJ), 2004 U.S. Dist. LEXIS 20625 (D. Del. Oct. 5,
  2004) .................................................. 5

2

# TAB 1

LEXSEE 2002 U.S.DIST.LEXIS 5951

**IN RE: TRANS WORLD AIRLINES, INC., et al., Debtors. HIGH RIVER LIMITED PARTNERSHIP, KARABU CORP. and LOWESTFARE.com, LLC, Appellants, v. TRANS WORLD AIRLINES, INC., et al., Appellees.**

**Chapter 11, Case No. 01-0056-PJW, Civil Action No. 01-226-SLR (Appeal Nos. 01-18, 01-27 and 01-28)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 5951**

**March 26, 2002, Decided**

**DISPOSITION:** Appeal was dismissed.

**COUNSEL:** [*1] For TRANSWORLD AIRLINES, INC., AMBASSADOR FUEL CORPORATION, LAX HOLDING COMPANY, INC., MEGA ADVERTISING INC, NORTHWEST 112TH STREET CORPORATION, TWA AMBASSADOR CLUB, INC., TRANS WORLD COMPUTER SERVICES, INC., TRANSCONTINENTAL & WESTERN AIR, INC., TWA AVIATION INC., TWA GROUP INC., TWA STANDARDS & CONTROLS, INC., TWA STOCK HOLDING COMPANY, TWA-D.C. GATE COMPANY, INC., TWA-LAX GATE COMPANY, INC., TWA LOGAN GATE CO., INC., TWA-NY/NJ GATE COMPANY, INC., TWA-OMNIBUS GATE COMPANY, INC., TWA-SAN FRANCISCO GATE COMPANY, INC., TWA-HANGAR 12 HOLDING COMPANY, INC., OZARK GROUP INC., TWA NIPPON INC., TWA EMPLOYEE SERVICES, INC., TWA GETAWAY VACATIONS, INC., TRANSWORLD EXPRESS, INC., INTERNATIONAL AVIATION SECURITY INC., GETAWAY MANAGEMENT SERVICES, INC., GETAWAY GROUP (U.K.) INC., debtors: Laura Davis Jones, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, DE.

For HIGH RIVER LIMITED PARTNERSHIP, KARABU CORP., LOWESTFARE.COM, appellants: Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, Wilmington, DE.

For AMBASSADOR FUEL CORPORATION, LAX HOLDING COMPANY, INC., MEGA ADVERTISING INC, NORTHWEST 112TH STREET CORPORATION, TWA AMBASSADOR CLUB, INC., TRANS WORLD COMPUTER [*2] SERVICES, INC., TRANSCONTINENTAL & WESTERN AIR, INC., TWA AVIATION INC., TWA GROUP INC., TWA STANDARDS & CONTROLS, INC., TWA STOCK HOLDING COMPANY, TWA-D.C. GATE COMPANY, INC., TWA-LAX GATE COMPANY, INC., TWA LOGAN GATE CO., INC., TWA-NY/NJ GATE COMPANY, INC., TWA-OMNIBUS GATE COMPANY, INC., TWA-SAN FRANCISCO GATE COMPANY, INC., TWA-HANGAR 12 HOLDING COMPANY, INC., OZARK GROUP INC., TWA NIPPON INC., TWA EMPLOYEE SERVICES, INC., TWA GETAWAY VACATIONS, INC., TRANSWORLD EXPRESS, INC., INTERNATIONAL AVIATION SECURITY INC., GETAWAY MANAGEMENT SERVICES, INC., GETAWAY GROUP (U.K.) INC., appellees: Laura Davis Jones, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

At Wilmington, this 26th day of March, 2002;

IT IS ORDERED that debtors' motion to dismiss as





moot the appeals filed by the High River Entities challenging the bankruptcy court's authorization of the Key Employee Retention Plan, rejection of the Karabu Ticket Agreement, and March 12, 2001 Sale Order (D.I. 11) is granted for the reasons that follow:

1. This court has jurisdiction to hear an [*3] appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).

2. **Appeal of the Sale Order**. To promote certainty and finality in bankruptcy sales, 11 U.S.C. § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if an objecting party failed to obtain a stay of the [*4] sale. See Cinicola v. Scharffenberger, 248 F.3d 110, 121 (3d Cir. 2001). The statute provides:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Thus, before an appeal of an order approving the sale of property to a good faith purchaser can be deemed moot, two conditions must be satisfied: (1) the underlying sale must not have been stayed pending appeal, and (2) reversing or modifying the authorization to sell would affect the validity of the sale. See Krebs Chrysler-Plymouth, Inc. v. Valley Motors,

Inc., 141 F.3d 490, 499 (3d Cir. 1998).

a. Appellants contend that the bankruptcy court erroneously determined that debtors' transaction with AMR Corporation ("American") was consummated in good faith and, therefore, their appeal of the Sale Order is not moot pursuant to § [*5] 363(m). The court finds that the bankruptcy court correctly concluded that American's purchase of substantially all of debtors' assets was "at arm's length, negotiated in good faith and for fair value." (D.I. 10, Ex. 1 at P12) After careful examination of the voluminous record, the bankruptcy court determined that there was "no evidence of unlawful insider influence or improper conduct," nor was there "any evidence of fraud or collusion between American and [debtors], or American and other bidders." (Id.) The bankruptcy court based this finding on evidence of record that a Section 363 sale within sixty days of the bankruptcy petition was the only way for debtors to avoid a piecemeal liquidation of their assets n1 (debtors possessed inadequate capital to sustain a self-help plan), the only "strategic transaction" available to debtors was American's proposal, n2 and debtors bargained with American to obtain "meaningful concessions" over American's initial bid. (Id. at PP10, 16-18, 20-25, 59) This court concurs with the bankruptcy court's assessment and finds no evidence in the record to suggest any bad faith or collusion surrounding debtors' transaction with American. Thus, [*6] the High River Entities' appeal of the Sale Order is moot pursuant to § 363(m).

n1 In their emergency motion for a stay of the Sale Order pending appeal, appellants argued that the evidence "established that the timing of this bankruptcy filing and the expedited nature of the bidding process was orchestrated by American to preclude or 'chill' other bids." (Bankr. D.I. 1021 at 10) The bankruptcy court appropriately rejected this argument because of evidence supporting debtors' dire financial situation and the need to make Section 1110 payments to debtors' aircraft lessors by March 12, 2001. (D.I. 10, Ex. 1 at PP17-18)

n2 The bankruptcy court determined that the proposal offered by Carl Icahn's organization, TWA Acquisition Group, Inc., was "completely inadequate as an





'alternative transaction' proposal contemplated by the Bidding Procedures Order." (D.I. 10, Ex. 1 at P39) "It made no commitment to [debtors]; it was not a binding agreement to propose a plan; it had no realistic or detailed plan for preserving [debtors] as a standalone entity; and it was submitted without the $ 50 million deposit." (Id.) Mr. Icahn's revised DIP proposals were also "not viable or meritorious alternative transactions" and "procedurally defective." (Id. at P49) "American complied with, and was the only entity that complied with, the Bidding Procedures Order." (Id. at P46)

[*7]

3. **Appeals of the Key Employee Retention Plan and Rejection of the Karabu Ticket Agreement.** The court also finds that the appeals of the bankruptcy court's authorization of the Key Employee Retention Plan and rejection of the Karabu Ticket Agreement are equitably moot pursuant to In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996) (en banc) for the following reasons: n3

> n3 The court declines to apply § 363(m) as the vehicle for dismissing these appeals as moot, as suggested by debtors.

a. Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable. See id. at 559. The court should consider several prudential factors when evaluating equitable mootness, including: (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the success of the plan, [*8] (4) whether the relief requested would affect the rights of the parties not before the court, and (5) the public policy of affording finality to bankruptcy judgments. See id. at 560. These "factors are given varying weight, depending on the particular circumstances, but the foremost consideration is whether the reorganization plan has been substantially consummated." In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000).

b. **Substantial Consummation of the Plan.** Debtors' plan was substantially consummated on April 9, 2001, when sale of substantially all of debtors' assets to American was completed.

c. **Obtaining a Stay.** The failure to obtain a stay favors dismissal for equitable mootness. See Continental, 91 F.3d at 562. Here, appellants unsuccessfully moved for a stay pending appeal in the bankruptcy court, district court and Third Circuit.

d. **The Success of the Plan.** If the requested relief has an, "integral nexus" with the reorganization plan such that it would cause the "reversal or unraveling" of the plan, dismissal for equitable mootness is favored. See PWS Holding Corp., 228 F.3d at 236. [*9] In this case, the rejection of the Karabu Ticket Agreement was a condition of the consummation of debtors' transaction with American. (D.I. 10, Ex. 2 at 6-7, 11-12) Although the benefit to debtors' management under the Key Employee Retention Plan was not contingent on the sale to American in particular, a management retention program would be a fundamental component of any plan of reorganization chosen by debtor. (Id., Ex. 1 at P19, Ex. 2 at 7-8) Granting appellants' requested relief would disrupt debtors' sale of substantially all of its assets to American.

e. **Parties Not Before the Court.** Because the Key Employee Retention Plan and rejection of the Karabu Ticket Agreement are intertwined with the sale of debtors' assets, a determination here will affect all third parties with an economic stake in the sale, including debtors' 20,000 employees, the St. Louis region, and consumers who have purchased TWA tickets that American has assumed. (D.I. 10, Ex. 1 at P74)

f. **Finality.** The ability of the parties to rely on the orders of the bankruptcy court weighs in favor of dismissing the appeal for equitable mootness. See In re Zenith Elecs. Corp., 2002 U.S. Dist. LEXIS 2369, Nos. 99-746, 99-747, 00-399, 2002 WL 226242, [*10] at *4 (D. Del. Feb. 11, 2002).

IT IS FURTHER ORDERED that appellants' motion to vacate the underlying bankruptcy orders (D.I. 13) is denied. The appeals are moot based on statutory and equitable grounds, and not pursuant to Article III, therefore, the Munsingwear doctrine does not apply. See generally Cinicola, 248 F.3d 110 (distinguishing between constitutional mootness and statutory mootness

  

in bankruptcy context). See also *In re Highway Truck Drivers & Helpers Local Union No. 107*, 888 F.2d 293, 299 (3d Cir. 1989) (vacating district court judgment pursuant to *Munsingwear* because matter was mooted by intervening judgment of state Supreme Court relieving debtor of liability to appealing creditors).

IT IS FURTHER ORDERED that appellants' motion to consolidate (D.I. 5) is denied as moot.

Sue L. Robinson

United States District Judge




TAB 2

LEXSEE 2002 BANKR. LEXIS 1851

**IN THE MATTER OF: Buildnet, Inc.; et al. Debtors**

**Case Nos. 01-82293 through 01-82299 (Consolidated for Administration)**

**UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA, DURHAM DIVISION**

**2002 Bankr. LEXIS 1851**

**September 20, 2002, Decided
September 20, 2002, Filed**

**DISPOSITION:** Court entered findings of fact and conclusions of law.

**COUNSEL:** [*1] For BuildNet, Inc., Debtor, fka UFAB, Inc. fdba Sun Forest Systems. John A. Northern, Chapel Hill, NC. Richard M. Hutson, II, Durham, NC.

Michael D. West, Bankruptcy Administrator, Greensboro, NC.

**JUDGES:** Catharine R. Carruthers, United States Bankruptcy Judge.

**OPINION BY:** Catharine R. Carruthers

**OPINION:**

### MEMORANDUM OPINION

This matter coming before the Court after notice to all parties in interest and hearing on June 4, 2002, in the U.S. Bankruptcy Court in Durham, N.C., to consider the Debtors' Motions for Orders: (A) Conditionally Approving the Assumption, Assignment, and Sale of Debtors' Interests Under Certain Executory Contracts; (B) Determining Amounts Necessary to Cure Defaults and Compensate for Pecuniary Loss; (C) Approving Procedures for Sale, Including Compensation and Reimbursement of Expenses to Selling Agent; and (D) Scheduling Final Hearing to Confirm Sale and Assumption and Assignment, or Rejection, of Executory Contracts with regards to Artemis Management Systems, Inc., Broadvision, Inc., NuView Systems, Inc., Oracle Corporation, Portal Software, Inc., Rational Software,

Inc. and Selectica, Inc. (the "Motions"), and after considering the matters set forth in the Motions, [*2] the comments of any parties present and wishing to be heard, and the official file the Court makes the following findings of fact and conclusions of law:

### FACTS

On August 8, 2001, (the "Commencement Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code and an Order for relief was entered in each bankruptcy case. The Debtors contemporaneously sought consolidation of these proceedings for purposes of administration only. The Debtors have continued in possession of their respective assets and continued operation of their businesses as debtors-in-possession. No creditors committee has been formed in these cases. This Court has proper and personal jurisdiction over the subject matter hereof and the parties pursuant to 28 U.S.C. §§ 151, 157, and 1334 and the Standing Order entered by the United States District Court for the Middle District of North Carolina. This is a core proceeding within 28 U.S.C. § 157(b)(2).

The Debtor, BuildNet, inc. ("BuildNet"), was engaged in the business of the development and sale of various software with a principal office in Durham, North Carolina. BuildNet [*3] primarily devoted its efforts to the development of software for the building industry; however, through a series of acquisitions, software for other industries and markets were developed. Prior to the commencement date, BuildNet either formed or purchased the other affiliated debtors, each of which is owned 100% by BuildNet. The direct subsidiaries and affiliates of BuildNet that comprise the filing entities are

  

the F.A.S.T. Management Group, Inc., RIM Data Systems, LLC, BuildNet Corp., BuildNet Financial Services, Inc., The UniLink Group, Inc. and Contractors Software Group, Inc. (collectively referred to as the "Debtors").

Since the commencement date, the Debtors developed and executed a plan of orderly liquidation, subject to Court approval, for the sale of certain primary assets of the Debtors. This process resulted in a public auction of the five (5) main software applications owned by the Debtors on September 24, 2001. The sales were confirmed by the Court and have closed, with sale proceeds sufficient to pay all secured claims in fill. These initial sales were then followed by a series of public and private sales of furniture, fixtures, and other equipment in various locations [*4] across the country. In this regard, the Debtors retained DoveBid, Inc. ("DoveBid") as auctioneer of the IT equipment.

In conjunction with the development of the Debtors' businesses, including but not limited to the acquisition of other entities, one or more of the Debtors entered into software license agreements or similar contracts, some of which included provisions for support or maintenance, and for which intellectual property licenses or rights the Debtors expended substantial sums in payments to the other parties to the agreements. These contracts are not uniform, but most if not all of the contracts provide for a nonexclusive license of certain intellectual property to the Debtors, with duties which remain due and owing on both sides of the agreement. Accordingly, the Debtors believe that the contracts are "executory contracts" within the meaning of § 365 and other applicable sections of the Bankruptcy Code. The Debtors wish to assume, assign and sell these license rights pursuant to the sale procedures set forth in the Motions, employing DoveBid for this purpose. With respect to the issue of assignment, the license agreements fall into three distinct groups: (1) those that [*5] prohibit assignment; (2) those that prohibit assignment except under limited circumstances; and (3) those that do not address the assignment of the license.

The Debtors entered into license agreements with both Portal Software, Inc. ("Portal") and Oracle Corporation ("Oracle") which fall into the first group and specifically prohibit assignment under any circumstances. The Debtors acquired their interest under the Oracle license agreement for $ 643,200. The Oracle license agreement grants the Debtors a nonexclusive license for the use of a database and e-commerce software known as the Oracle Enterprise Edition. The Oracle agreement provides that the Debtors may not assign the license or make the programs available to any third party for use in business operations.

The Debtors paid initial fees or compensation in the aggregate amount of approximately $ 300,000 to Portal to acquire their interests under the license agreement. In broad terms, the Portal license agreement provides a nonexclusive license to the Debtors for the use of an automatic billing and accounts receivable system. Portal objects to the assumption and assignment of these license rights and the license agreement on [*6] the basis that § 365(c) precludes such assignment without the consent of Portal. The license agreement provides for a blanket prohibition on the assignment of the license agreement including by way of merger, sale or acquisition without Portal's prior written consent. The Portal license agreement further provides:

> Licensee agrees that it will not itself, or through any parent, affiliate, agent or other third party ... sell, lease, license, sublicense, encumber or otherwise deal with any portion of the Licensed Software or Documentation ... provide, disclose or make available to, or permit use of the Licenses Software by persons other than Licensee's employees who have signed a confidentiality agreement consistent with the terms and provisions herein, without Portal's written consent.

The majority of the license agreements that are the subject of the Debtors' Motions fall into the second group and prohibit assignment except under limited circumstances. The Debtors entered into license agreements with the following: Artemis Management Systems, Inc. ("Artemis") at a cost of $ 32,000 for the use of project management software; Broadvision, Inc. ("Broadvision") at a cost of [*7] $ 660,000 for a nonexclusive and nontransferable license to the Debtors for web site development and content management; Rational Software, Inc. ("Rational") at a cost of $ 123,000 for the use of intellectual property used in the development of software applications; and Selectica, inc. ("Selectica") at a cost of $ 400,000, for the use of software to allow e-customers of the Debtors the ability

 

to pick and design features of the Debtors' products on-line. Each of these license agreements prohibits the free assignment of the license agreement to another individual or entity, but allows for transfer in some limited instances such as to a successor entity in the event of a sale or merger. None of these license agreements contemplate the individual sale or auction of the license as proposed by the Debtors. Each of the license agreements in this group includes provisions which require confidentiality by the Debtors.

Finally, the Debtors acquired an interest in a nonexelusive license from NuView Systems, Inc. ("NuView") at a cost of $ 87,500 for web-based online human resources software. The Nuview license agreement does not address the assignment of the license; however it provides that [*8] the Debtors "acknowledge[s] the trade secret and proprietary nature of the Software and agree[s] to limit any access to, or operation of, the Software and documentation to Company employees only, and to take reasonable measures to protect the Software and Documentation from unauthorized duplication."

Portal was the only entity which filed an objection to the Debtors' Motions. Broadvision filed a proof of claim in the amount of $ 180,970.07 for services performed pursuant to a service agreement with the Debtors. NuView filed a proof of claim with attached invoices and a copy of the license agreement.

## DISCUSSION

As a general rule, most patent, trademark, technology and other intellectual property licenses are executory contracts. See, e.g., Lubrizol Enterprises v. Richmond Metal Finishers, 756 F.2d 1043, 1045 (4th Cir. 1985), cert. denied, 475 U.S. 1057, 89 L. Ed. 2d 592, 106 S. Ct. 1285 (1986) (nonexclusive license agreement to utilize patented technology was executory); In re Select-A-Seat Corp., 625 F.2d 290, 292 (9th Cir. 1980) (licensing agreement granting exclusive rights to use and license corporate debtor's software packages in all but five areas of the [*9] world was an executory contract); In re Biopolymers, Inc., 136 B.R. 28, 30 (Bankr. D. Conn. 1992)(patent license agreement an executory contract); In re Chipwich, Inc., 54 B.R. 427, 430 (Bankr. N.Y. 1985) (trademark license agreement for eggnog executory). Therefore, as a preliminary matter, the Court finds that the license agreements are executory contracts within the meaning of § 365. n1 Section 365(f) of the

Bankruptcy Code provides that, subject to the provisions of § 365(c), a debtor may generally assume and assign executory contracts to a third party, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease." 11 U.S.C. § 365(f). Section 365(c) provides:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if--

> (l)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance [*10] from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

> (B) such party does not consent to such assumption or assignment;

11 U.S.C. § 365(c).

> n1 The Fourth Circuit has adopted the "Countryman" definition which provides that an executory contract is a "contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn.L.Rev. 439, 460 (1973).

The use of the term "applicable law" in both 365(f) and 365(c) has created uncertainty regarding the scope of the exception carved out by 365(c) and has been addressed by numerous courts. Some courts have interpreted the term "applicable [*11] law" in 365(f) to be limited to state laws that enforce contractual anti-assignment provisions and found that 365(c) refers to

  

applicable law which excuses the nonassigning party from performance, independent of any express contractual anti-assignment clause. See Metropolitan Airports Comm'n v. Northwest Airlines (In re Midway Airlines), 6 F.3d 492, 495 (7th Cir. 1993); In re Pioneer Ford Sales. Inc., 729 F.2d 27, 29 1st Cir. 1984). Other courts have found that "applicable law" in § 365(f) encompasses any law which bars assignment, whether contractual or otherwise, and concluded that § 365(c) is focused upon the rights of the nonassigning third party and the material nature of the identity of the parties. See In re Magness, 972 F.2d 689, 696 (6th Cir. 1992); Perlman v. Catapult Entertainment (In re Catapult Entertainment) 165 F.3d 747, 752 (9th Cir. 1999). The distinctions made by the various interpretations of §§ 365(c) and (f) are somewhat illusive, and in many instances, the result would be the same under either approach. The traditional example of an executory contract that would fall within the scope of § 365(c) under either approach is a personal services contract, [*12] where applicable law would excuse the nonassigning party from accepting performance from a third party precisely because the identity of the parties is a material condition of the contract. See In re McVay, 169 B.R. 49 (Bankr. W.D. Tenn. 1994); In re Catron, 158 B.R. 624, 627 (Bankr. E.D.Va. 1992), aff'd 158 B.R. 629 (E.D.Va. 1993), aff'd 25 F.3d 1038 (4th Cir. 1994).

The Fourth Circuit has not taken a clear position on this issue. The District Court of Maryland, following Magness, has interpreted 365(c)(1) to apply to situations in which performance by the non-debtor party to an agreement is excused if "the identity of the debtor is a material condition of the contract when considered in the context of the obligations which remain to be performed under the contract." In re Antonelli, 148 B.R. 443, 448 (D. Md. 1992) (finding that Section 365(c) allows the transfer of a partnership interest otherwise prohibited by state partnership law when the identity of the general partner is not material to the nature of the partnership duties). n2 In re Neuhoff Farms. Inc., the court concluded that "applicable law" [*13] in 365(c) means "nonbankruptcy law that excuses the nondebtor from accepting performance from or rendering performance to anyone other than the debtor." In re NeuhoffFarms, Inc., 258 B.R. 343, 349 (Bankr. E.D.N.C. 2000), quoting In re Schick, 235 B.R. 318, 323 (Bankr. S.D.N.Y. 1999). In this instance, § 365 bars the assignment of the license agreements under any of the above approaches because the Court concludes that, consistent with the Copyright

Act, the nonexclusive licenses are personal to the Debtors, and the identity of the Debtors is a material element of the license agreements.

> n2 The Fourth Circuit affirmed this decision in an unpublished opinion, without determining whether it agreed with the approach of the district court. See Gould v. Antonelli (In re Antonelli), 4 F.3d 984, 1993 WL 321584 (4th Cir. 1993).

The Copyright Act, 17 U.S.C. § 101 et seq. is intended to grant the copyright owner a limited monopoly which provides the owner a [*14] period of time during which to reap the benefits of his work. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 429, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984) n3 The owner has the exclusive right to authorize the use of the copyrighted work. 17 U.S.C. § 106. The Copyright Act distinguishes between exclusive and non-exclusive licenses. The holder of the exclusive license has all the rights of the copyright owner, to the extent of that license, and, as such, may freely transfer his rights. 17 U.S.C. § 201(d)(2).

> n3 In Sony Corp. of America, the Supreme Court also stated that, when faced with an issue of copyright law, it was appropriate to look to patent law for guidance "because of the historic kinship between patent law and copyright law." Sony Corp. of America, 464 U.S. at 439, 104 S.Ct. at 787, (1984).

In contrast, the holder of a non-exclusive license does not obtain the rights of ownership of the copyright, [*15] but acquires only a personal interest in a copyright. See In re Patient Education Media, Inc 210 B.R. 237 (Bankr. S.D.N.Y. 1997); Everex Sys. v. Cadtrak Corp. (In re CFLC, Inc), 89 F.3d 673, 679 (9th Cir. 1996). Accordingly, a nonexcusive license is personal to the transferee and cannot be assigned without the consent of the licensor. Id. See also Unarco Industries, Inc. v. Kelley Co., 465 F.2d 1303, 1306 (7th Cir. 1972); In re Valley Media, Inc., 279 B.R. 105, 135-136 (Bankr. D.Del. 2002); In re Golden Books Family Entertainment, Inc.,

  

269 B.R. 300, 309 (Bankr. D.Del. 2001). Since a non-exclusive license may not be assigned by a licensee under applicable copyright law, a debtor in possession may not assign a non-exclusive license absent the consent of the non-debtor party as provided by 11 U.S.C. § 365(c). In re Access Beyond Techs., Inc., 237 B.R. 32 (Bankr. D.Del. 1999); In re Patient Education Media, Inc., 210 B.R. 237, 243 (Bankr. S.D.N.Y. 1997).

The Debtors maintain that despite federal copyright law, with regard to these license agreements the identity of the [*16] licensee is immaterial and that the performance due under the license agreements is not unique to the Debtors. The Debtors argue that the performance due under the agreement could be performed by any number of entities and that it cannot be maintained that such performance is personal or unique to the licensee.

The Debtors' reasoning simply does not apply to the facts present in this case. The software that is the subject of these motions is highly sophisticated and customized for the individual needs of a customer, qualities that are reflected in the purchase prices. Furthermore, all of the license agreements require confidentiality regarding either the provisions of license agreements or the use of the software in addition to the protections afforded by the Copyright Act. Allowing the Debtors to sell these licenses at an auction conducted by Dovebid would create the possibility that a competitor could purchase a license. This sale process would strip the copyright holder of the right to control the dissemination of their copyrighted material and would undermine the purpose of the Copyright Act. The Court finds that the identity of the Debtors is a material condition of the license [*17] agreement such that the Licensor is excused from accepting performance from an assignee.

The Debtors further contend that implied consent is found in the agreements with Artemis, Broadvision, Rational and Selectica because those agreements provide for assignment under limited circumstances and those parties did not file objections to this motion. The Debtors also argue that consent is implied in the NuView agreement, in that it does not address the issue of assignability. Under the Copyright Act, a licensee does not have the right to sublicense or assign unless expressly authorized. Gardner v. Nike 279 F.3d 774, 778 (9th Cir. 2002) (citing Harris v. Emus Records Corp., 734 F.2d 1329, 1333 (9th Cir.); see also Unarco, 465 F.2d at 1306; Stenograph Corp. v. Fulkerson, 972 F.2d 726, 729 n. 2 (7th Cir. 1992) ("Patent licenses are not assignable in the absence of express language."); Verson Corp. v. Verson Int'l Group PLC, 899 F. Supp. 358, 363 (N.D.Ill. 1995) (finding that in the absence of compelling evidence of a clear intent to consent to assignment, the court will not imply a right to assign a license). [*18] This Court cannot conclude that silence constitutes express consent when, pursuant to Copyright Act, a copyright license is not transferable or assignable.

Based upon the foregoing findings and conclusions, orders will be entered contemporaneously with the entry of this memorandum opinion denying the Debtors' Motions.

Entered this the 20th day of September 2002.

Catharine R. Carruthers

United States Bankruptcy Judge

  

TAB 3

LEXSEE 1996 U.S.APP.LEXIS 25014

**In re: CRAY COMPUTER CORPORATION, Debtor, WILLIAM KUNTZ, III, Appellant, v. CRAY COMPUTER CORPORATION, Appellee.**

**No. 96-1125**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

**1996 U.S. App. LEXIS 25014; 13 Colo Bankr Ct Rep 298**

**September 26, 1996, Filed**

**NOTICE:** [*1] RULES OF THE TENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1996 U.S. App. LEXIS 42528.

**PRIOR HISTORY:** (D. Colo.). ( D. Ct. No. 96-AP-329).

**DISPOSITION:** Appeal DISMISSED as moot.

**COUNSEL:** WILLIAM KUNTZ, III, Appellant, Pro se, Lake Placid, NY.

For CRAY COMPUTER CORPORATION, Appellee: Jack L. Smith, Holland & Hart, Denver, CO.

**JUDGES:** Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.

**OPINION BY:** DEANELL REECE TACHA

**OPINION:**

ORDER AND JUDGMENT *

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); [*2] 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Appellant William Kuntz III appeals from the district court's dismissal of his appeal from the bankruptcy court's Order Approving the Sale of All of the Debtor's Patent Assets and Certain Related Intellectual Property (the "Order"). Jurisdiction is based upon 28 U.S.C. § 158(d). We dismiss the appeal as moot.

The bankruptcy court entered the Order on January 29, 1996. On February 2, 1996, International Business Machines Corp. ("IBM") filed a motion to correct an oversight or omission in the Order under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(a). On February 7, 1996, the bankruptcy court granted IBM's motion and entered a modified Order correcting the omissions identified by IBM. Appellant opposed the sale of the assets and on February 9, 1996, he filed a notice of appeal in the district court. On February 13, 1996, the district court issued an Order to Show Cause requiring appellant to show cause within ten days why the bankruptcy appeal should not be dismissed for appellant's failure to file the notice of appeal within ten days of the entry of the Order. On February 27, 1996, the district [*3] court dismissed the appeal--the same day that appellant filed his untimely response to the Order to Show Cause. The sale of the



1996 U.S. App. LEXIS 25014, *3; 13 Colo Bankr Ct Rep 298

patent assets that were the subject of the Order of the bankruptcy court has since been consummated. Neither the bankruptcy court nor the district court granted a stay of the Order pending appeal.

Under Fed. R. Bankr. P. 8002(b)(4) a timely motion under Fed R. Bankr. P. 9024 by one party tolls the time period in which all other parties may file a notice of appeal until entry of the order that resolves the Rule 9024 motion. Therefore, it appears that IBM's motion tolled the period in which Kuntz could file a notice of appeal, rendering appellant's appeal of the bankruptcy court's Order timely. However, the court need not decide whether appellant's failure to timely respond to the district court's Order to Show Cause waived any objection to the dismissal of his appeal, because this appeal is moot.

In its Order, as modified, the bankruptcy court found that the purchaser of debtor's patent assets, Dasu, L.L.C., is a good faith purchaser under 11 U.S.C. § 363(m).

Under § 363(m) the validity of the sale of a debtor's property is unaffected by the reversal or [*4] modification of the order permitting the sale under § 363(b) or (c), unless the sale permitted by the order is stayed pending appeal. Therefore, a finding of good faith under § 363(m) moots appeals in cases "where the only remedies available are those that affect the validity of the sale." In re Osborn, 24 F.3d 1199, 1203-04 (10th Cir. 1994); see also In re Whatley, 169 Bankr. 698, 700-01 (D. Colo. 1994), aff'd, 54 F.3d 788 (10th Cir. 1995). Because appellant objects only to the validity of the sale, his appeal is hereby DISMISSED as moot.

The mandate shall issue forthwith.

ENTERED FOR THE COURT,

Deanell Reece Tacha

Circuit Judge

  

TAB 4

LEXSEE 2004 U.S.DIST.LEXIS 1879

**In re: POLAROID CORPORATION, et al., Debtors. STEPHEN J. MORGAN, Appellant, v. POLAROID CORPORATION, et al., Appellees.**

**Civil Action No. 02-1353 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2004 U.S. Dist. LEXIS 1879**

**February 9, 2004, Decided**

**SUBSEQUENT HISTORY:** Related proceeding at Sczesny Trust v. KPMG LLP, 2004 U.S. Dist. LEXIS 18896 (S.D.N.Y., Sept. 20, 2004)

**PRIOR HISTORY:** [*1] Bankruptcy Case No. 01-10864 PJW. Morgan v. Polaroid Corp. (In re Polaroid Corp.), 2004 U.S. Dist. LEXIS 1917 (D. Del., Feb. 9, 2004)

**DISPOSITION:** Appellees' joint motion to dismiss appeal granted.

**COUNSEL:** Stephen J. Morgan, Pro Se Appellant.

Gregg M. Galardi, Esquire, Mark L. Desgrosseilliers, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware.

Of Counsel: Eric W. Kaup, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Chicago, Illinois. Attorneys for Debtors and Debtors-in-Possession, Appellees.

Brendan Linehan Shannon, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.

Of Counsel: Fred Hodara, Esquire, Philip Dublin, Esquire, Nava Hazan, Esquire of AKIN GUMP STRAUSS HAUER & FELD, LLP, New York, New York. Counsel for the Official Committee of Unsecured Creditors of Polaroid Corporation, et al.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is Appellees' Joint Motion To Dismiss Appeal Filed By Stephen J. Morgan (the "Appellant"). (D.I. 22.) For the reasons discussed below, the Court will grant the Motion.

**I. Background**

The instant [*2] action is a bankruptcy appeal arising from the voluntary bankruptcy filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. In April of 2002, the Debtors filed a motion for an order authorizing the sale of substantially all of their assets to OEP Imaging Corporation (the "Purchaser"). After addressing various objections to the Debtors' motion, the Bankruptcy Court issued an order authorizing the Debtors' sale of its assets. In its order, the Bankruptcy Court denied with prejudice Appellant's objections to the Debtors' motion. By his appeal, Appellant requests the Court to reverse the Bankruptcy Court's order approving the Debtors' sale of substantially all of their assets.

**II. Parties' Contentions**

The Debtors contend that the Court should dismiss Appellant's appeal because it is statutorily moot under 11





U.S.C. § 363(m). (D.I. 22.) The Debtors also contend that the instant appeal is procedurally improper and should therefore be dismissed. Id. In response, Appellant requests the Court to favorably construe his motion as he is proceeding pro se. (D.I. 25.) Appellant also requests [*3] the Court to establish an equity committee and hold oral arguments in order to "make a full independent review of the facts" of Debtors' bankruptcy. Id.

### III. Discussion

In order to promote certainty and finality in bankruptcy sales, 11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Id.; Cinicola v. Scharffenberger, 248 F.3d 110, 121-22 (3d Cir. 2001). Section 363(m) "fosters the 'policy of not only according finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" Cinicola, 248 F.3d at 122 n. 13 (citations omitted). In interpreting Section 363(m) of the Bankruptcy Code, the Third Circuit utilizes a two-prong test for mootness: [*4] 1) whether the bankruptcy court order authorizing the sale was stayed pending appeal; and 2) whether vacating the bankruptcy court's order would affect the validity of the sale. Id. at 122; Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 499 (3d Cir. 1998). Applying these principles to the instant appeal, the Court concludes it must grant the Debtors' Motion.

It is undisputed that the Appellant did not stay the Bankruptcy Court's order approving Debtors' sale of substantially all of their assets. The only issue before the Court is whether vacating the Bankruptcy Court's order will affect the validity of the sale. Cinicola, 248 F.3d at 122. In evaluating whether vacating a bankruptcy court's order will affect the validity of a sale, a court must look to the relief requested by the appellant. Krebs, 141 F.3d at 499. In the instant case, Appellant does not request any specific relief from the Bankruptcy Court's order approving the sale of the Debtors' assets. After reviewing the items Appellant designated for this appeal, the Court understands that the relief requested by Appellant is a reversal of [*5] the Bankruptcy Court's order approving the sale of the Debtors' assets. Therefore, the Court concludes that the instant appeal is statutorily moot because reversing the Bankruptcy Court's order approving the sale would clearly affect the sale's validity. Thus, the Court will grant the Debtors' Motion.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that Appellees' Joint Motion To Dismiss Appeal Filed By Stephen J. Morgan (D.I. 22) is **GRANTED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

  

TAB 5

LEXSEE 2004 U.S.DIST.LEXIS 20625

**In re NET2000 COMMUNICATIONS INC., et al., Debtors. OPERATING
TELEPHONE COMPANY SUBSIDIARIES OF VERIZON COMMUNICATIONS,
INC., et al., Appellants, v. NET2000 COMMUNICATIONS, INC., CAVALIER
EAST L.L.C. and CAVALIER TELEPHONE L.L.C., Appellees. OPERATING
TELEPHONE COMPANY SUBSIDIARIES OF VERIZON COMMUNICATIONS,
INC., et al., Appellants, v. NET2000 COMMUNICATIONS, INC., CAVALIER
EAST, L.L.C. and CAVALIER TELEPHONE, L.L.C., Appellants.**

**Chapter 11, Case No. 01-11324 (MFW) Jointly Administered, Civil Action No.
02-146-KAJ, Civil Action NO. 02-232-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2004 U.S. Dist. LEXIS 20625; 43 Bankr. Ct. Dec. 217**

**October 5, 2004, Decided**

**DISPOSITION:** Bankruptcy Court's order affirmed.

**COUNSEL:** [*1] For NET2000 COMMUNICATIONS INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For POPSPACE CORPORATION, Debtor: Bayard J. Snyder, Snyder & Associates, P.A., Wilmington, DE.

For BROAD MARGIN INC., Debtor: Neal J. Levitsky, Fox Rothschild LLP, Wilmington, DE.

For OPERATING TELEPHONE COMPANY, SUBSIDIARIES OF VERIZON COMMUNICATIONS INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON FLORIDA INC., Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON MARYLAND INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW ENGLAND INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW JERSEY INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW YORK INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON PENNSYLVANIA INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON SOUTH INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, [*2] Wilmington, DE.

For VERIZON VIRGINIA INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON WASHINGTON D.C. INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For NET2000 COMMUNICATIONS INC., Appellee: Michael Busenkell, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For CAVALIER EAST LLC, Appellee: Donald J. Detweiler, Saul Ewing LLP, Wilmington, DE, Michael Busenkell, Morris, Nichols, Arsht & Tunnell,

  

Case 1:06-cv-00588-JJF    Document 26    Filed 12/01/2006    Page 22 of 25

Page 2

2004 U.S. Dist. LEXIS 20625, *2; 43 Bankr. Ct. Dec. 217

Wilmington, DE.

For CAVALIER TELEPHONE LLC, Appellee: Donald J. Detweiler, Saul Ewing LLP, Wilmington, DE, Michael Busenkell, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

DON BESKRONE, Trustee, Pro Se: U.S. Trustee, Wilmington, DE.

For MICHAEL B. TRUSTEE OF THE ESTATE OF NET2000 COMMUNICATIONS, INC., Trustee: Bradford J. Sandler, Adelman, Lavine, Gold & Levin, Wilmington, DE.

For NET2000 COMMUNICATIONS INC., a Delaware corporation, Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS HOLDINGS INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS [*3] GROUP, INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS INVESTMENTS INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS OPERATIONS INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS CAPITAL EQUIPMENT INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS SERVICES INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS REAL ESTATE INC., Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For FREBON INTERNATIONAL CORPORATION, a Virginia corporation, Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For NET2000 COMMUNICATIONS OF VIRGINIA, LLC, a Virginia limited liability company, Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For VISION I.T., a California corporation, Debtor: Michael Gregory Wilson, Morris, Nichols, Arsht & Tunnell, Wilmington, [*4] DE.

For POPSPACE COMMUNICATIONS INC., Debtor: Bayard J. Snyder, Snyder & Associates, P.A., Wilmington, DE.

For BROAD MARGIN INC., Debtor: Neal J. Levitsky, Fox Rothschild LLP, Wilmington, DE.

For OPERATING TELEPHONE COMPANY SUBSIDIARIES OF VERIZON COMMUNICATIONS INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON FLORIDA INC., Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON MARYLAND INC., Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW ENGLAND INC., dba Verizon Massachusetts, Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW JERSEY INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW YORK INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON PENNSYLVANIA INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON NEW ENGLAND INC., Verizon Rhode Island, Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON SOUTH INC., Appellant: [*5] Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington,

  

Case 1:06-cv-00588-JJF     Document 26     Filed 12/01/2006     Page 23 of 25

Page 3

2004 U.S. Dist. LEXIS 20625, *5; 43 Bankr. Ct. Dec. 217

DE.

For VERIZON VIRGINIA INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For VERIZON WASHINGTON D.C. INC., Appellant: Kathleen M. Miller, Smith, Katzenstein, & Furlow, Wilmington, DE.

For NET2000 COMMUNICATIONS INC., Appellee: Michael Busenkell, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Bradford J. Sandler, Adelman, Lavine, Gold & Levin, Wilmington, DE.

For CAVALIER EAST LLC, 2nd Appellee, Appellee: Donald J. Detweiler, Saul Ewing LLP, Wilmington, DE.

For CAVALIER TELEPHONE LLC, 2nd Appellee, Appellee: Donald J. Detweiler, Saul Ewing LLP, Wilmington, DE.

DON BESKRONE, Trustee: U.S. Trustee, Wilmington, DE.

JUDGES: Kent A. Jordan, District Judge.

OPINION BY: Kent A. Jordan

OPINION:

### MEMORANDUM ORDER

Presently before this court is an appeal by Operating Telephone Company Subsidiaries of Verizon Communications, Inc., et al., ("Verizon") from the January 10, 2002 order of the Bankruptcy Court approving the purchase agreement between NET2000 Communications, Inc., et al., ("Debtors") and Cavalier East, L.L.C., ("Cavalier") (Docket Item ["D.I."] 10. P. A197; [*6] the "Order."). For the reasons that follow, that Order is affirmed.

### I. Background

November 19, 2001, Debtors filed a motion with the Bankruptcy Court to sell its assets to Cavalier. (D.I. 10 at A1.) On December 27, 2002, the interested parties appeared before the Bankruptcy Court for consideration of the.Debtors' motion to sell its assets. (D.I. 1, Ex A at 2.) At that time, counsel for Verizon objected to the proposed sale on the grounds that the sale could not be

consummated without the assumption of Vepizora's agreements with Debtor (the "Verizon agreements"). (*Id.* at 48-50.) The Bankruptcy Court judge ruled that Verizon did not have standing to object because the contracts were not being assumed and consequently that issue was not before the court. (*Id.* at 48-50.)

On January 10, 2002 the Bankruptcy Court entered an order: (A) Approving Purchase Agreement Between the Debtors and Cavalier East, L.L. C; (B) Authorizing Sale of Assets Free and Clear of All Liens, Claims and Encumbrances; (C) Authorizing the Assumption and Assignment of Certain Executory Contracts; and (D) Granting Related Relief. (D.I. 10 at A197.)

In that order, the Bankruptcy Court held, "Debtors [*7] shall not assume and assign any executory contract to which the operation subsidiaries of Verizon Communication, Inc. ... are a counterpart ...." (D.I. 10 at A207.)

On January 18, 2002, Verizon appealed under 28 U.S.C. Sec. 158(a).

### II. Standard of Review

This court has jurisdiction over appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). On appeal, this court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). When reviewing mixed questions of law and fact, this court will accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal quotations omitted).

### III. Discussion

In this appeal there are two main issues: [*8] (1) whether the Bankruptcy Court erred in holding that Verizon had no standing to object to the sale of the Debtors' assets, Cavalier was a "good faith" purchaser, and Debtors soundly exercised their business judgment, and, (2) whether under Sec 365(b)(1)(A) there was a *de facto* assumption of the Verizon agreements.

  

Case 1:06-cv-00588-JJF    Document 26    Filed 12/01/2006    Page 24 of 25

Page 4

2004 U.S. Dist. LEXIS 20625, *8; 43 Bankr. Ct. Dec. 217

With regard to the first issue on appeal, I find that section 363(m) moots any inquiry into the validity of the Debtor's asset sale. With respect to the second question, I find that there was no *de facto* assumption of Verizon's executory contract.

The question of whether the sale of the Debtor's assets was valid is moot. Section 363(m) of Title 11 of the United State Code provides:

> The reversal or modification of appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m) (2004).

The United [*9] States Court of Appeals for the Third Circuit has held that "when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies,* 788 F.2d 143, 149-50 (3d Cir 1986). The Third Circuit went on the state that a finding of good faith is best performed by the bankruptcy court, as it is more familiar with the parties and such a finding "encourages finality of the bankruptcy court's judgments under section 363(b)(1) ... .". *Id.* at 150. In its order, the Bankruptcy Court, found that Cavalier was a good faith purchaser. (D.I. 10 at 3.) There is nothing in the record to suggest that the bankruptcy court abused its discretion. n1

---

n1 Appellant cites *In re Abbotts Dairies,* 788 F.2d at 149, for the proposition that the debtor must show that the purchaser is acting in good faith. (D.I. 9 at 37.) Appellant, however, misapprehends the holdings in that case. In that case the Third Circuit stated that the evidence was insufficient for the district court to find that the purchaser acted in good faith, and as the bankruptcy court had not made such a determination the case should be remanded to the

bankruptcy court. 788 F.2d at 149-150. In the instant case the Bankruptcy Court has determined that the purchaser acted in good faith and as such, that line of reasoning is not applicable here.

[*10]

If the purchaser is found to have acted in good faith, then this court must apply a two-prong test for mootness under § 363(m). (1) whether the order was stayed pending appeal and (2) whether vacating the order would affect the validity of the sale. *Cinicola v. Scharffenberger,* 248 F.3d 110, 128 (3d Cir. 2001)(citing *Krebs Chrysler-Plymouth v. Valley Motors, Inc.,* 141 F.3d 490, 499 (3d Cir. 1998)). In this case, Verizon concedes that it failed to obtain a stay of the sale pending appeal. (D.I.9 at 9.) Therefore, the only issue is whether vacating the Bankruptcy Court order to the sell the assets would affect the validity of the sale. The answer is it would.

The settlement has already been approved and, in accordance with the Bankruptcy Court's Order, Debtors' assets have been transferred to the purchasers free and clear of liens. Accordingly, modification or reversal of the Bankruptcy Court's Order would affect the validity of the sale and is impermissible under § 363(m). Consequently, the questions of whether the Bankruptcy Court erred in not allowing Appellant to object to the sale of the Debtors' assets and whether the Debtors soundly exercised [*11] their business judgment is moot.

The Debtors did not perform a *de facto* assumption and assignment of Verizon's agreements. Section 365(a) of Title 11 of the United States Code provides: "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Section 365 does not address a de facto assumption. Additionally, Verizon has not offered, nor can I find, any case law to support Verizon's contention that the Debtors could have preformed a *de facto* assumption of the Verizon agreements.

## IV. Conclusion

Therefore, IT IS HEREBY ORDERED that the January 10, 2002 order of the Bankruptcy Court is AFFIRMED.

Kent A. Jordan

  

2004 U.S. Dist. LEXIS 20625, *11; 43 Bankr. Ct. Dec. 217

UNITED STATES DISTRICT JUDGE                 Wilmington, Delaware

DATE: October 5, 2004

  

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2006, I electronically filed the **Compendium of Unreported Opinions Cited in Answering Brief of SEB S.A. and Groupe SEB USA, Appellees** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following to whom I also delivered a copy by hand delivery:

(Counsel for the Debtors)
Laura Davis Jones, Esquire
Bruce Grohsgal, Esquire
Sandra G. M. Selzer, Esquire
Pachulski Stang Ziehl Young
Jones & Weintraub LLP
919 North Market Street, 17th
Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
**(via Hand Delivery and Electronic Mail)**

(Counsel for Regal Ware, Inc.)
Morton R. Branzburg, Esquire
Steven K. Kortanek, Esquire
Patrick A. Costello, Esquire
Jennifer L. Scoliard, Esquire
Klehr Harrison Harvey Branzburg
& Ellers LLP
919 North Market Street, Suite
1000
Wilmington, Delaware 19801
**(via Hand Delivery and Electronic Mail)**

(Counsel for the Official Committee of Unsecured Creditors)
David M. Fournier, Esquire
Evelyn J. Meltzer, Esquire
Pepper Hamilton LLP
1313 Market Street, Suite 5100
Wilmington, Delaware 19801
**(via Hand Delivery and Electronic Mail)**

(Counsel for Wachovia Bank,
National Association)
Joseph H. Huston, Jr., Esquire
Stevens & Lee, P.C.
1105 North Market Street, 7th
Floor
Wilmington, Delaware 19801
**(via Hand Delivery and Electronic Mail)**

I hereby certify that on December 1, 2006, I have mailed, via first-class mail unless otherwise indicated, the document(s) to the following non-registered participants:

(Counsel for Regal Ware, Inc.)
Daniel R. Johnson, Esquire
Joseph A. Kromholz, Esquire
Ryan Kromholz & Manion, S.C.
P.O. Box 26618
Milwaukee, Wisconsin 53226-0618

(Counsel for CitiGroup)
Joseph Smolinsky, Esquire
Chadbourne and Parke LLP
30 Rockefeller Plaza
New York, New York 10112

(Counsel for the Official Committee of Unsecured Creditors)
Sharon Levine, Esquire
Bruce Buechler, Esquire
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068-1791

(Counsel for Wachovia Bank, National Association)
Steven B. Soll, Esquire
Jonathan N. Helfat, Esquire
Matthew J. Miller, Esquire
Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, New York 10169-0075

(Counsel for Lifetime Brands, Inc.)
Ronald S. Gellert, Esquire
Michael Busenkell, Esquire
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
**(via Hand Delivery)**

(Counsel to Lifetime Brands, Inc.)
Leonard Klingbaum, Esquire
Neil E. Herman, Esquire
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178

Gregg M. Galardi (I.D. No. 2991)
Matthew P. Ward (I.D. No. 4471)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
mpward@skadden.com