# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GLOBAL HOME PRODUCTS, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>Case No. 06-10340 (KG)<br>(Jointly Administered) |
| REGAL WARE, INC.,<br><br>               Appellant,<br><br>   v.<br><br>GLOBAL HOME PRODUCTS LLC, et al.,<br><br>              Appellees. | Civil Action No. 06-588 (JJF) |

## APPELLANT REGAL WARE, INC.'S REPLY BRIEF AND
## RESPONSE TO MOTION TO DISMISS

| | |
|---|---|
| KLEHR, HARRISON, HARVEY,<br>BRANZBURG & ELLERS, LLP<br>Steven K. Kortanek, Esq. (Bar No. 3106)<br>919 Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>(302) 426-1189 | RYAN KROMHOLZ & MANION, S.C.<br>Daniel R. Johnson (State Bar No. 1033981)<br>Joseph A. Kromholz (State Bar No. 1002464)<br>P. O. Box 26618<br>Milwaukee, Wisconsin 53226-0618 |
| December 18, 2006 | Attorneys for Regal Ware, Inc. |

---

[1] The Debtors are the following entities: Global Home Products LLC; GHP Holding Company LLC; GHP Operating Company LLC; Anchor Hocking Acquisition Inc.; Anchor Hocking Inc.; AH Acquisition Puerto Rico, Inc.; Anchor Hocking Consumer Glass Corporation; Anchor Hocking CG Operating Company LLC; Anchor Hocking Operating Company LLC; Burnes Acquisition Inc.; Intercraft Company; Burnes Puerto Rico, Inc.; Picture LLC; Burnes Operating Company LLC; Mirro Acquisition Inc.; Mirro Puerto Rico, Inc.; Mirro Operating Company LLC.

DEL1 65280-2

## TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT ................................................................................ 2

II.  ARGUMENT ........................................................................................................... 3

    A.   Appellees Have Failed to Provide any Basis to Characterize the Assumption and Assignment of the Trademark Sublicense Agreement as a True "Sale" Subject to Section 363(m) ........................................................................................................... 3

    B.   The Trademark License Is Not Assignable Without Regal Ware's Consent .............. 6

    C.   The Law Of The Case Doctrine Does Not Preclude Consideration Of This Case On The Merits ................................................................................................................ 10

III. CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

DEP Corp. v. Interstate Cigar Co., 622 F.2d 621 (2d Cir. 1980).................................................. 10

Gruen Marketing Corp. v. Benrus Watch Co., 955 F.Supp 979 (N.D.Ill.1997) ........................... 10

In re Buildnet, Case No. 01-82293, 2002 Bankr. LEXIS 185 ................................................... 7, 8

In re Joshua Slocum Ltd., 922 F.2d 1081 (3d Cir. 1990) .......................................................... 3, 6

In re N.C.P. Mktg. Group, 337 B.R. 230 (D. Nev. 2005)............................................................ 10

In re Quantegy, Inc., 326 B.R. 467 (Bankr. D. Ala. 2005) ............................................................ 8

In re Rooster, Inc., 100 B.R. 228 (Bankr. D. Pa. 1989).................................................................. 8

Krebs Chrysler-Plymouth v. Valley Motors, Inc., 141 F.3d 490 (3d Cir.1998), ....................... 4, 6

N.C.P. Mktg. Group v. Blanks (In re N.C.P. Mktg. Group), 337 B.R. 230 (D. Nev. 2005) .......... 7

Tap Publ'n, Inc. v. Chinese Yellow Pages (New York) Inc., 925 F. Supp. 212 (S.D.N.Y. 1996).. 9

Silverstar Enters., Inc. v. Aday, 537 F.Supp. 236 (S.D.N.Y.1982) .............................................. 10

Ste. Pierre Smirnoff, FLS v. Hirsch, 109 F.Supp. 10 (S.D. Cal. 1952). ......................................... 9

## Statutes

11 U.S.C. §§ 363 and 365.................................................................................................... passim

15 U.S.C. § 1127 ........................................................................................................................ 10

I.  **SUMMARY OF ARGUMENT**

The appeal is not automatically or statutorily moot, because the true character of the transaction regarding the Trademark Sublicense Agreement is that of an assumption and assignment under section 365 of the Bankruptcy Code. The use of the "sale" label by Appellees in their transaction was purely an effort to achieve mootness by invoking section 363(m) of the Bankruptcy Code. The "sale" mechanism was not required to dispose of the Trademark Sublicense Agreement, and indeed Appellees have failed to explain why it is that they actually needed to "sell" the Trademark Sublicense Agreement when section 365 of the Bankruptcy Code provides all the relief that is necessary to transfer all of the Debtors' rights in that agreement to SEB. Given the true character of the transaction as an assumption and assignment under section 365 of the Bankruptcy Code, there is no statutory mootness. Moreover, reversal on appeal would not interfere with the validity of any "sale".

The Bankruptcy Court committed a reversible error of law in holding that the Trademark Sublicense Agreement was freely assignable. Mirro did not have the right to sublicense or assign the marks under accepted U.S. trademark law precedent, absent Appellant's consent. Mirro's rights should not have been expanded so as to allow assignment or assumption under section 365 of the Bankruptcy Code over Appellant's objection. Appellant's consent was required but never granted, and therefore the Bankruptcy Court must be reversed.

## II.  ARGUMENT

### A.  Appellees Have Failed to Provide any Basis to Characterize the Assumption and Assignment of the Trademark Sublicense Agreement as a True "Sale" Subject to Section 363(m)

Appellees argue that In re Joshua Slocum Ltd., 922 F.2d 1081 (3d Cir. 1990), does not apply or is distinguishable.  But they do not dispute that Joshua Slocum is still good law.  As good law, Joshua Slocum stands for the undeniable proposition that an assumption and assignment of the Trademark Sublicense Agreement to SEB was, as a matter of law, the only necessary statutory relief to grant SEB the rights it desired to acquire in the Trademark Sublicense Agreement.

Appellees have not responded to the question of why there was an actual and necessary requirement to use section 363(b) to transfer any rights regarding the Trademark Sublicense Agreement to SEB.  If they cannot answer that fundamental question, then it should be clear to this Court that notwithstanding any self-serving "sale" labels used, and incantation of section 363 with respect to the assumption and assignment, the true character of the transaction regarding the Trademark Sublicense Agreement is purely that of a transaction authorized under section 365(a) of the Bankruptcy Code.  As Joshua Slocum makes clear, (a) there is no need to call upon section 363 to effect an assumption and assignment of all rights under a lease or executory contract, and (b) section 365 itself has no statutory mootness provision such as section 363(m).

Appellees have also failed to seriously dispute Appellant's argument, in Section V.A.1. of its Opening Brief, that a functional test should be used to determine the true character of a purported combined section 365/363 transaction such as the assumption, assignment and "sale"

3

of the Trademark Sublicense Agreement. Appellees have not challenged this Court's ability to determine (or to direct the Bankruptcy Court to determine on remand) whether Appellees' use of a section 363 "sale" label for the assumption and assignment of the Trademark Sublicense Agreement was unnecessary and was designed only as an effort to moot Appellant on appeal and divest it of appeal rights. .

Krebs Chrysler-Plymouth v. Valley Motors, Inc., 141 F.3d 490 (3d Cir.1998), and the cases that follow it, do not preclude the kind of functional test called for to reconcile the principles of Joshua Slocum with this later line of authority. Appellant submits that one cannot so easily square Joshua Slocum with Krebs and its progeny, while at the same time respecting the separateness of sections 365 and 363 of the Bankruptcy Code. If the Krebs line of cases is considered an absolute constraint on this Court's authority, then of course the inquiry ends, at least before this Court. Yet Krebs does not end the inquiry, as it does not address in any way the discretion of this Court, or the Bankruptcy Court on remand, to go beyond the Appellees' self-serving transactional labels. Indeed, the collective silence of the Appellees as to why they needed to label the assumption and assignment as also a "sale" of the Trademark Sublicense Agreement yields a strong inference that the only reason they did so was to take advantage of the Krebs rule. If this strategy is routinely permitted, then we have a use of the Bankruptcy Code by which a debtor can engineer mootness simply by placing the desired "sale" label upon a transaction that is solely an assumption and assignment transaction. It is transparent that using the "sale" label is superfluous, precisely because Joshua Slocum clearly and unambiguously holds that section 365 provides plenary relief as to assumption and assignment of an executory contract or unexpired lease, and no further relief under the Bankruptcy Code is actually required to effect such an assumption and assignment.

4

A consideration of two hypotheticals illustrates the importance of ascertaining the true character of an assumption and assignment transaction, to respect the separateness of sections 365 and 363. The hypotheticals involve two separate transactions proposed by a debtor to transfer to a third party acquiror all of the debtor's rights embodied in two separate but substantially identical trademark license agreements. We assume further that one set of motion papers seeks relief under section 365 alone, while the other seeks relief under sections 365 and 363 and is denominated as a "sale". If the motions are each granted over the non-debtor licensor's objection, the relief obtained is legally indistinguishable. In each example, the rights obtained by the purchasing entity are the same. If the aggrieved licensor seeks to appeal, however, under the Appellees' bright-line rule, the simple invocation of section 363 in one transaction would automatically divest the licensor of its appeal rights. In contrast, the licensor in the other transaction has a full right of appeal. This is where Joshua Slocum shows its particular importance, for it is binding on this Court for the rule that a section 365 assumption and assignment is a stand-alone, independent form of relief that legally transfers all rights and obligations under an executory contract to the assignee. In the two hypotheticals discussed above, it is plainly the case that the use of 363 is legally superfluous. Indeed, after Krebs, the use of section 363 in this form of "add-on" relief has become driven by debtors' desire to exploit a sort of merger of sections 365 and 363 in order to moot appeals and expedite the sale process. As such, the "sale" label should itself be considered suspect, used for no purpose other than to invoke statutory mootness.

Despite Krebs, there can be no dispute that under the most elemental principles of statutory interpretation, 365 should stand alone and be independent of, section 363. It is important and of particular note that section 365 has unique protections for non-debtor parties to

5

executory contracts like the Trademark Sublicense Agreement, which section 363 does not have. These particular protections enforce applicable non-bankruptcy law restrictions on assignment, which reflects a clear intent on the part of Congress to preserve the property rights of non-debtor contract parties to enforce their legitimate assignment restrictions. The abuse of section 363 to thwart appeal of these important Congressional policies embodied in section 365 has created the problematic "third situation" that the court of appeals in Joshua Slocum stated would be impermissible. ("We decline to interpret the mootness principles in such a way that would, in effect, create a third situation where parties are required to seek a stay, i.e., the assignment of leases under § 365. While § 363(m) contains a provision requiring a stay, the section that applies in this case, § 365, does not."). Id. at 1097.

### B. THE TRADEMARK LICENSE IS NOT ASSIGNABLE WITHOUT REGAL WARE'S CONSENT.

#### 1. Regal Ware's Consent to Assign the Sublicense Agreement Was Required and Never Granted

None of the Appellees even address why or how the consent provision of the Sublicense Agreement should be entirely read out of the Sublicense Agreement.

The Sublicense Agreement itself provides that "[Mirro] may not assign or transfer this [Sublicense Agreement] by operation of law or otherwise without the written consent of [Regal]." Sublicense Agreement § 1.3. It remains undisputed that this consent was never given.

This Court must enforce this unambiguous contract clause as written. *See, e.g.*, Morgan, Lewis & Bockius LLP, 929 F. Supp. 764 (D.N.J. 1996).

6

The Bankruptcy Court exceeded its authority in allowing the assignment of the trademark sublicense agreement. "Because the owner of the trademark has an interest in the party to whom the trademark is assigned so that it can maintain the good will, quality, and value of its products and thereby its trademark, trademark rights are personal to the assignee and not freely assignable to a third party." N.C.P. Mktg. Group v. Blanks (In re N.C.P. Mktg. Group), 337 B.R. 230, 236 (D. Nev. 2005).

In re Buildnet, Case No. 01-82293, 2002 Bankr. LEXIS 1851, at *11, 14-15, cited by the Debtors here, actually supports Regal Ware's position. Although Buildnet discusses copyright licenses[2], Buildnet actually prohibited assignment of the copyright license to the Debtors, concluding that "the identity of the Debtors is a material element of the license agreements… [a]llowing the Debtors to sell these licenses at an auction … would create the possibility that a competitor could purchase a license." Id. at 15-16. The Bankruptcy Court effectively allowed assignment of the REGAL mark to its competitor, over the loud objections of Regal Ware. That is one of the very reasons why the Bankruptcy Court committed reversible error in this case.

### 2.  Trademark Law Prohibits Assignment of the Sublicense Agreement

The Appellees cite numerous cases in attempting to draw a distinction between exclusive and non-exclusive licenses, arguing that although a non-exclusive license would be blocked from assignment, an exclusive license is freely transferable. The cases are not necessarily decided based on exclusivity alone. Instead, there are other controlling factors such as analysis of state

---

[2] Copyright licenses bear a unique statutory arrangement far different from the trademark laws. Compare 17 U.S.C. §§ 101, 106, 201(d) with 15 U.S.C. § 1060. Copyright licenses define an exclusive license as an effective transfer of ownership, 17 U.S.C. § 101 whereas trademark law contains no such definition.

7

laws or analysis of contractual terms, or other factual circumstances directing the outcomes. *See, e.g.,* In re Rooster, Inc., 100 B.R. 228, 232 (Bankr. D. Pa. 1989) ("the issue [was] narrowly framed by the parties: [did] the [sub-]licensing agreement constitute a contract for personal services, which applicable Pennsylvania law [held] unassignable?")

The distinction in the cited cases is not, and should not be, between exclusive and non-exclusive trademark licenses. Instead, the requirement in the present case that Regal Ware's consent is required distinguishes cases such as In re Quantegy, Inc., 326 B.R. 467, 471 (Bankr. D. Ala. 2005), where the contract at issue authorized assignment to a third party under enumerated circumstances, such as the filing of bankruptcy.

Indeed, even exclusive trademark licenses have been held to be non-assignable. *See* Tap Publ'n, Inc. v. Chinese Yellow Pages (New York) Inc., 925 F. Supp. 212, 218 (S.D.N.Y. 1996) (exclusive trademark license was personal to licensee and not assignable without licensor's consent).

And even if the appropriate distinction is based on exclusivity, by definition, the Sublicense Agreement in this case cannot be construed as an exclusive license. The sublicensor (initially Newell, now Regal Ware) retained all ownership rights and goodwill associated with the REGAL trademark, and therefore, the Sublicense Agreement does not fit even SEB's definition of what constitutes an exclusive trademark license. "[A]n exclusive license under trademarks…assigns the exclusive ownership and good-will in the trademarks." Ste. Pierre Smirnoff, FLS v. Hirsch, 109 F.Supp. 10, 12 (S.D. Cal. 1952). The Sublicense Agreement at issue in this case does not assign ownership and goodwill in the marks. In fact, the opposite is

8

true in this case, Regal Ware remained the exclusive owner of the REGAL mark and its associated goodwill.

Other Courts have rejected Hirsch under circumstances such as here, where the license did not grant rights to the licensee for the exclusive and irrevocable right in the business, its good will and the trademark. *See* DEP Corp. v. Interstate Cigar Co., 622 F.2d 621, 624 (2d Cir. 1980) (Hirsch "is cited … as authority for the proposition that an exclusive licensee is an assignee under 15 U.S.C. § 1127…. However, in that case the plaintiff was the owner of the entire exclusive and irrevocable right in the business, its good will and the trademark in question. The court in Hirsch noted that the plaintiff was an assignee and not a mere licensee.")

The present facts are clearly not indicative of an assignment, but instead of a license. Gruen Marketing Corp. v. Benrus Watch Co., 955 F.Supp 979, 983 (N.D.Ill.1997) (holding that licensing agreement was not assignment where agreement reserved many rights to licensor and stated that licensor was "owner of all right, title and interest in and to [the mark], where [Gruen] acknowledges that, as between [Gruen] and [Benrus], [Benrus] is the owner of all right, title and interest in and to the Licensed Mark in any form or embodiment thereof…. Gruen's argument … **does not overcome the express language of the License Agreement that Benrus retained ownership of the BENRUS mark.**" (emphasis added)); *see also* Silverstar Enters., Inc. v. Aday, 537 F.Supp. 236, 240 (S.D.N.Y.1982) (noting that DEP probably controls situation where licensing agreement contains clause acknowledging "Licensor's exclusive right, title and interest in and to the [marks]").

The debtors never even attempt to distinguish In re N.C.P. Mktg. Group, 337 B.R. 230, 237 (D. Nev. 2005). The federal district court in In re N.C.P. Mktg. Group held that a trademark

9

license is "personal and non-assignable" under applicable trademark law, and cannot be assumed or assigned by the chapter 11 debtor licensee without the licensor's consent. "We note here that while the License Agreement specifies that NCP had a right of 'assignment,' legally and technically, all NCP had the right to do was to license, not assign. … Because the Blanks retained the ownership rights of the trademark and gave NCP a non-exclusive license, NCP only had the right to transfer a non-exclusive license and not to 'assign' the trademark in the exclusive sense." *Id.*

As the undisputed owner of the mark, Regal Ware must retain the right to control who is allowed to use the mark. The Sublicense Agreement provides that Mirro never had the right to sublicense others, and never had the right to assign the license absent consent. Yet, the Court's decision effectively allows this, and must be reversed.

### C.   The Law Of The Case Doctrine Does Not Preclude Consideration Of This Case On The Merits

The Official Committee of Unsecured Creditors argues that the law of the case doctrine warrants dismissal of this appeal. The sole issue presented in the Stay Motion was whether a stay was appropriate. Although this Court held that Regal Ware did not demonstrate a substantial likelihood of success on the merits, the decision to deny the Stay Motion was not itself a decision on the merits of the appeal. If this were in fact the law, a denial of a preliminary injunction would also be a decision on the merits, and such obviously cannot be the case. Furthermore, whether to grant a stay pending appeal is discretionary – the right to appeal is not. Furthermore, this Court lacked jurisdiction to decide the merits of the case, as the full record of the case was not event docketed with this Court was not even filed until September 21, 2006,

over a month following this Court's August 17, 2006 denial of Regal Ware's Emergency Stay Motion. Therefore, the law of the case doctrine cannot be applied to this Case.

### III.  CONCLUSION

For the reasons stated herein, Appellant's appeal is not statutorily moot and may be considered on the merits. The Bankruptcy Court committed a reversible error of law in holding that the Trademark Sublicense Agreement was freely assignable. Mirro did not have the right to sublicense or assign the marks under accepted U.S. trademark law precedent, absent Appellant's consent. Mirro's rights should not have been expanded so as to allow assignment or assumption under section 365 of the Bankruptcy Code over Appellant's objection. Appellant's consent was required but never granted, and therefore the Bankruptcy Court must be reversed.

Respectfully submitted:            KLEHR, HARRISON, HARVEY,
                                   BRANZBURG & ELLERS, LLP


                                   */s/ Steven K. Kortanek*
                                   Steven K. Kortanek, Eq. (Bar No. 3106)
                                   919 Market Street, Suite 1000
                                   Wilmington, Delaware  19801
                                   (302) 426-1189

Date:  December 18, 2006           Ryan, Kromholz & Manion, S.C.
                                   Daniel R. Johnson   (State Bar No.   1033981)
                                   Joseph A. Kromholz (State Bar No. 1002464)
                                   RYAN KROMHOLZ & MANION, S.C.
                                   P. O. Box 26618
                                   Milwaukee, Wisconsin 53226-0618

                                   Attorneys for Regal Ware, Inc.